[No. D023289. Fourth Dist., Div. One. Apr. 25, 1996.]

FRANK AND FREEDUS et al., Plaintiffs and Appellants, v. ALLSTATE INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Frank and Freedus, Eric B. Freedus and Robert M. Feinson for Plaintiffs and Appellants.

Richard A. Krimen, Charles W. Savage, Barbara Gallios-Lee, Ropers, Majeski, Kohn & Bentley, Mark G. Bonino and Allison L. Dobbrow for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—The law firm of Frank and Freedus, James Lieberman and Eric Freedus (hereafter Frank and Freedus) appeal summary judgments

in favor of Allstate Insurance Company (Allstate) and State Compensation Insurance Fund (State Fund). Frank and Freedus contend the court erred in finding, as a matter of law, that neither Allstate or State Fund owed a duty to provide a defense to Frank and Freedus for a complaint by a former employee seeking damages for wrongful termination and defamation. We affirm.

## FACTS

In April 1993, a former attorney with Frank and Freedus, Martin Caprow, filed a complaint against Frank and Freedus alleging Frank and Freedus improperly terminated his employment on the basis he was gay and had tested positive for HIV. Caprow alleged causes of action for discrimination based on a physical handicap, violation of San Diego's AIDS discrimination ordinance, violation of Labor Code provisions, violation of San Diego's Human Dignity Ordinance, wrongful termination in violation of public policy, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress and defamation. As to the defamation cause of action, Caprow alleged: "When [the office administrator] later discussed with Defendant Freedus that staff morale was low because of the decision to terminate Caprow when others remained who had shorter tenure and/or performance problems, Defendant Freedus dismissed Caprow's importance with the comments that he is 'likely gay and probably has AIDS' and then instructed [the office administrator] to inform staff that the 'real reason' for his termination was *failure to perform and develop as an associate.*' " (Italics added.) Caprow alleged the italicized language defamed him.

Frank and Freedus tendered the defense of this suit to its business liability insurer, Allstate, and to its workers' compensation insurer, State Fund.

Allstate refused to defend.

State Fund initially refused to defend but in October 1993 agreed to defend Frank and Freedus after this court issued an opinion indicating a duty to defend in such circumstances.[1] State Fund's defense was subject to a reservation of rights to contest coverage. In a November 1993 letter, Frank and Freedus acknowledged the defense was subject to a reservation of rights. In January 1994, State Fund in a letter memorializing the agreement to

[1] *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (Cal.App.) review granted January 27, 1994, subsequent opinion (1994) 9 Cal.4th 27 [36 Cal.Rptr.2d 100, 884 P.2d 1048]. See footnote 6, *post.*

defend, stated it was accepting the defense due to our recent decision but added if that decision were "accepted for review, or ordered decertified or unpublished, State Fund reserves its right to withdraw from the defense of this action to and/or seek reimbursement of defense costs expanded [*sic*] on behalf of Frank & Freedus." State Fund reiterated this position later in the letter, stating: "State Fund reserves the right to withdraw from the defense and/or seek reimbursement from you should it be determined that there is no potential for coverage under the State Fund policy either as a result of a legal decision of [*sic*] voluntary action by the plaintiff."

State Fund sent an auditor to Frank and Freedus's attorneys in January 1994 to review defense costs.

On February 24, 1994, Frank and Freedus filed a cross-complaint against State Fund for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing.[2] Frank and Freedus sought a declaration State Fund had a duty to defend pursuant to policy language stating:

"This workers' compensation insurance applies to bodily injury by accident or bodily injury by disease, including resulting death, subject to the following conditions:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"This employer's liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical or mental injury, including resulting death. Bodily injury does not include emotional distress, anxiety, discomfort, inconvenience, depression, dissatisfaction or shock to the nervous system, unless caused by either a manifest physical injury or a disease with a physical dysfunction or condition resulting in treatment by a licensed physician or surgeon."

Frank and Freedus alleged State Fund had "breached its contract by failing to investigate, to defend and to agree to indemnify [Frank and Freedus] in the underlying action" and, as a result, Frank and Freedus had "been compelled to engage counsel to defend it in the underlying action and to incur" attorney fees and other costs. As to the third cause of action for breach of the implied covenant of good faith and fair dealing, Frank and

---

[2]According to the cross-complaint, Frank and Freedus had earlier commenced an action for declaratory relief against State Fund and others but dismissed State Fund from the action when State Fund agreed to provide a defense.

Freedus made similar allegations that State Fund had refused to investigate, defend or indemnify, resulting in Frank and Freedus incurring attorneys fees and other costs. Frank and Freedus also alleged State Fund's "acts . . . were done intentionally, maliciously, oppressively and with the intent of depriving and defrauding [Frank and Freedus]."

As of March 7, 1994, State Fund had paid $20,000 in defense costs. At that time, State Fund's auditor recommended an additional payment of $60,000 but noted there would be additional billings for February and March 1994 which would "probably be in the $50,000 range." State Fund apparently paid the recommended additional $60,000. State Fund paid a total of $80,000 to the attorneys representing Frank and Freedus in the Caprow action.

On April 12, 1994, Frank and Freedus obtained a judgment in their favor in the Caprow action.

On April 18, 1994, Frank and Freedus filed a first amended complaint against Allstate and State Fund for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing. In the complaint, Frank and Freedus, inter alia, alleged: "The [Caprow] complaint filed and discovery subsequently conducted reveal that plaintiff therein alleges manifest bodily, physical, mental, emotional and personal injuries and damages arising out of various acts, omissions, events and occurrences for which coverage is provided under the aforementioned polices." Frank and Freedus repeated the allegations as to State Fund, including the same policy language as supporting coverage and a duty to defend. Frank and Freedus alleged Allstate's obligation to defend was based on policy language stating:

"Liabilities Covered

"We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect."

The amended complaint also contained causes of action for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing against Insurance Company of North America.

Both Allstate and State Fund filed motions for summary judgment. Allstate contended it had no duty to defend because its policy excluded coverage for personal injuries due to termination of employment or employment-related practices, including defamation. State Fund contended its policy

excluded coverage for the intentional conduct involved in the Caprow case and, further, did not cover posttermination emotional distress because it was not compensable within the workers' compensation system. In its memorandum in reply to Frank and Freedus's opposition to summary judgment, State Fund specifically pointed out that its defense had been conditional and subject to a reservation of rights.

On September 12, 1994, Frank and Freedus moved for summary adjudication on the basis Allstate and State Fund owed a duty to defend the Caprow action as a matter of law.

The court found there were no triable issues of material fact and, based on the policies and applicable law, neither Allstate nor State Fund had a duty to defend Frank and Freedus in the Caprow action. The court issued summary judgments in favor of Allstate and State Fund.

## DISCUSSION

### I

### *Summary Judgment Procedure*

■ The determination whether an insurance company had a duty to defend is a proper subject for summary judgment. (*Regan Roofing Co.* v. *Superior Court* (1994) 24 Cal.App.4th 425 [29 Cal.Rptr.2d 413]; *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 298-301 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

■ The summary judgment procedure aims to discover whether there is evidence requiring the fact-weighing procedures of a trial. (*Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 353 [257 Cal.Rptr. 356].) "[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

" 'A defendant moving for summary judgment must conclusively negate a necessary element of the plaintiff's case or establish a complete defense, and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. [Citation.]' " (*Snoke* v. *Bolen* (1991) 235 Cal.App.3d 1427, 1431 [1 Cal.Rptr.2d 492]; *Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 841 [10 Cal.Rptr.2d 748].) "A party may not avoid summary judgment based on mere speculation and

conjecture [citation], but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" (*Compton* v. *City of Santee* (1993) 12 Cal.App.4th 591, 595-596 [15 Cal.Rptr.2d 660].)

█ In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].) The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law. (*Lichty* v. *Sickels* (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137].) While "[s]ummary judgment is a drastic procedure, should be used with caution [citation] and should be granted only if there is no issue of triable fact [citations]" (*Brose* v. *Union-Tribune Publishing Co.* (1986) 183 Cal.App.3d 1079, 1081 [228 Cal.Rptr. 620]), it is also true "[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one." (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 507 [86 Cal.Rptr. 744].) "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d 1092, 1107.)

II

*The Duty to Defend*

█ An insurance company's duty to defend arises from the contractual provisions contained in its policy. (*McMillin Scripps North Partnership* v. *Royal Ins. Co.* (1993) 19 Cal.App.4th 1215, 1220-1221 [23 Cal.Rptr.2d 243].) An insurer has a duty to defend an insured if it becomes aware of, or if a third party lawsuit pleads, facts that give rise to potential liability under the insurance policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].) An insurer's duty to defend is separate from and broader than its duty to indemnify. (*State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 965 [267 Cal.Rptr. 379].) "[T]he insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations]." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].) An insurance company may condition its defense and reserve its right to contest coverage and duty to defend. (See *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 586-587 [126 Cal.Rptr. 267].)

"The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has

been shown that there is *no* potential for coverage, . . ." (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th 287, 295, italics in original.)

## III

### *Summary Judgment as to Allstate*

■ Frank and Freedus argue Allstate had a duty to provide a defense because Allstate's business liability policy did not exclude coverage for Caprow's claim of "post-employment defamation."

Allstate's policy provided that they would "pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect." The policy defined "personal injury" as including "[l]ibel, slander or the publication of any material damaging to anyone's reputation." The policy specifically excluded:

"Bodily injury or personal injury arising out of any:

"(1) Refusal to employ;

"(2) Termination of employment;

"(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

"(4) Consequential bodily injury or personal injury as a result of (1) through (3) above.

"This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury."

■ The fundamental goal of interpreting a contract, including an insurance policy, "is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.]" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *American Motorists Ins. Co.* v. *Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1349 [24 Cal.Rptr.2d 106].) The courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.

[Citations.]" (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) " '. . . [I]f there is ambiguity . . . it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. . . . If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. . . .' . . . 'This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, "the objectively reasonable expectations of the insured." . . . Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. . . .' " (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667 [42 Cal.Rptr.2d 324, 897 P.2d 1], citations omitted.)

 Frank and Freedus contend the exclusion is ambiguous because it is inconsistent with the general definition of "personal" injury which includes libel and slander (and therefore defamation),[3] the term "employment-related" is ambiguous, the exclusion is ambiguous because it could be construed as either "related to employment" or "related to employment *practices*" and could be construed as either " 'directly related' or 'indirectly related' to the employment or to the employment practice." (Italics in original.)

We are unpersuaded by Frank and Freedus's argument the exclusionary language is ambiguous. The fact the policy's general definition of the term "personal injury" encompasses defamation does not set up a fatal inconsistency or ambiguity because in another section of the policy coverage is excluded for certain personal injuries, including defamation, in a particular context. An insurance policy may exclude coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances.

Nor is the term "employment-related" ambiguous because it is not specifically defined in the policy. The term is not technical in nature. It is used in its ordinary sense, i.e., related to employment. As a term, it modifies the specified acts (including defamation) as well as the terms "practices, policies, acts or omissions." The clear meaning of subdivision (2) of the exclusion is coverage for practices, policies, acts or omissions which are related to employment, including employment-related defamation.

The defamation here was clearly employment-related. The statement was made in the context of Caprow's employment and its content is directed to

---

[3]Civil Code section 44 provides: "Defamation is effected by either of the following: [¶] (a) Libel. [¶] (b) Slander."

Caprow's performance during employment. Thus, the defamation falls within subdivision (2) of the exclusion. The defamation is also encompassed within subdivision (3) of the exclusion, i.e., a personal injury (defamation) arising out of termination of employment; the statement was made in the context of and related to Caprow's termination of employment.

Our conclusion is also supported by the decision in *Loyola Marymount University* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217 [271 Cal.Rptr. 528]. In the *Loyola* case, two former employees sued their employer, Loyola Marymount University, for wrongful termination, violation of the constitutional right of privacy, discrimination based on religion and gender, breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress and violating the Labor Code and defamation. The university's liability insurer refused to defend.

The insurance policy excluded coverage for: " 'personal injury sustained by any person as a result of an offense directly or indirectly related to the employment or prospective employment of such person by the named insured.' " (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co., supra,* 219 Cal.App.3d 1217, 1222.)

The university argued this provision did not exclude coverage for "postemployment termination." (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co., supra,* 219 Cal.App.3d at p. 1223.) The court rejected this argument, stating: "Virtually conceding the cogency of the foregoing, [the university] heroically urges that a duty to defend the [employees'] actions yet exists, because they also embrace or at least potentially embrace charges of postemployment defamation, through 'compelled republication' of defamatory charges made in the course of the terminations. [Citation.] The asserted distinction is unavailing. Even though postemployment defamations would involve injuries occurring after the employment [citation], the offenses would still fall clearly within the policy exclusion, as either 'directly or indirectly related to the employment . . . .' [The university's] contention, that this language can (or must) be read as limited to injuries sustained when the employee is still employed, is semantically unreasonable and unacceptable. '[D]irectly or indirectly related to the employment' does not mean, and cannot reasonably be construed to mean 'committed during the employment.' The policy language clearly is broader than [the university] contends, and it covers all 'personal injuries' alleged or potentially at issue in the state court actions, because all of them arise from or derive from, and hence are 'related to,' [the employees'] employment and

termination." (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co.*, *supra*, 219 Cal.App.3d 1217, 1223.)

Frank and Freedus seek to distinguish the *Loyola* case on the basis the policy in *Loyola* excluded personal injuries " 'directly *or indirectly* related to the employment' " (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co.*, *supra*, 219 Cal.App.3d at p. 1222, italics added), while Allstate's policy makes no reference to acts or practices *indirectly* related to employment. This difference in policy language does not compel a different result. First, the defamation here was directly related to Caprow's employment, i.e., the statement was made in the context of Caprow's employment and its content directly related to Caprow's performance as an employee. Second, as in *Loyola*, the exclusionary language is clearly broader than Frank and Freedus contend and is not limited to acts (including defamation) occurring during the term of employment.[4] By its terms, the exclusion applies to all personal injuries arising not only during employment but also due to a "refusal to employ" and to "termination of employment." The contrary interpretation urged by Frank and Freedus is neither supported by the policy language nor is semantically reasonable.

We conclude the Allstate policy excluded coverage for Frank and Freedus's alleged defamation of Caprow and therefore Allstate had no duty to defend. The trial court properly granted summary judgment to Allstate.

## IV

### *Summary Judgment as to State Fund*

Frank and Freedus contend we must reverse the grant of summary judgment in favor of State Fund because State Fund's summary judgment motion was improperly limited to the complaint in the Caprow action[5] and ignored additional facts in Frank and Freedus's cross-complaint establishing two theories giving rise to a duty to defend, "namely: 1) State [Fund] accepted the tender of defense in the Caprow action, undertook that defense and payment therefore, and then without justification or notice breached that agreement and abandoned that defense; and 2) the Caprow complaint and the *extrinsic evidence* revealed facts which brought the action within the terms of the policy." (Italics in original.)

---

[4]We note the record is unclear as to when the alleged defamation occurred . On April 30, 1992, Caprow was apparently given notice of his termination but it was not effective until the end of May 1992. The alleged defamation may have, in fact, occurred "during" Caprow's employment.

[5]Frank and Freedus concede "that if coverage depended on the complaint in the *Caprow* action *alone*, judgment would have been proper."

Initially, we note the judgment here was based on a finding there was no coverage under the State Fund policy. Frank and Freedus do not dispute that finding. They do not point to any language in the State Fund policy supporting potential coverage or a duty to defend. Their arguments are based solely on a theory State Fund was not entitled to summary judgment because it failed its burden of negating all of Frank and Freedus's causes of action.

■ While State Fund had the burden of proving its right to summary judgment below, on appeal, Frank and Freedus, as the appellant, bears the burden of showing error. (See *Maggio, Inc.* v. *United Farm Workers* (1991) 227 Cal.App.3d 847, 878 [278 Cal.Rptr. 250].) In the absence of such a showing, we presume the judgment is correct. (See *Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 968 [233 Cal.Rptr. 735].) Further, in order to obtain a reversal, the appellant must establish the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

Thus, here, we begin with the presumption the judgment and the court's finding that there was no potential for coverage under the State Fund policy was correct. By not demonstrating any language in the State Fund policy provided a potential for coverage and thus a duty to defend, Frank and Freedus have not demonstrated any miscarriage of justice occurred due to an alleged failure by State Fund to address theories in Frank and Freedus's cross-complaint.[6]

Further, we find no merit to Frank and Freedus's specific arguments. Frank and Freedus's first argument seems to be based on a theory that once State Fund undertook the defense, it was thereafter forever barred from challenging coverage under the policy or a duty to defend. Such is not the law. ■ The law permits an insurance company to condition an acceptance of defense on a later right to contest coverage or to seek reimbursement of defense costs. (See *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1319 [241 Cal.Rptr. 427]; *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co., supra,* 53 Cal.App.3d 576, 586.)

The undisputed facts, as conceded by Frank and Freedus in their separate statement of undisputed facts in opposition to State Fund's summary judgment motion, establish State Fund so reserved its rights. On appeal, Frank

---

[6]We also note the policy language cited by Frank and Freedus in its cross-complaint, i.e., coverage for "bodily injury by accident or bodily injury by disease," clearly does not apply here. Even presuming Caprow suffered "bodily injury" from Frank and Freedus's action, the cause of the bodily injury was neither accidental nor caused by disease. (See also *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co., supra,* 9 Cal.4th 27, holding an insurance company issuing a similar workers' compensation policy does not have a duty to defend a suit brought by a former employee for wrongful termination because there is no potential for coverage under the policy.)

and Freedus assert State Fund may not now raise this issue because State Fund waived the issue by not pleading a reservation of rights as an affirmative defense in its answer to Frank and Freedus's cross-complaint. Frank and Freedus have cited no authority to support this assertion nor have we found any. This issue was raised below. State Fund in its memorandum in reply to Frank and Freedus's opposition to summary judgment, specifically cited the reservation of rights. Both parties submitted correspondence containing the reservation of rights and the issue was conceded by Frank and Freedus in its statement of undisputed facts.

Frank and Freedus also contend there was a factual dispute as to whether State Fund abandoned their defense. Frank and Freedus, however, cite no facts to support this contention.[7] Nor is there any claim any acts by State Fund prejudiced Frank and Freedus's defense; Frank and Freedus obtained a verdict in their favor in the underlying Caprow action. (Cf. *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 191 [231 Cal.Rptr. 791], recognizing an insurance company may be liable in damages for an inadequate defense even when there is ultimately a determination the insurance company had no duty to defend.)

As to Frank and Freedus's second argument, that there existed some "extrinsic evidence" which supported a duty to defend, Frank and Freedus merely assert such evidence existed. They neither cite to the record nor make any argument about how this unspecified extrinsic evidence established a potential for coverage under the policy. They have failed to meet their burden of presenting a reviewable issue. (See *Cox Cable San Diego, Inc.* v. *City of San Diego*, *supra*, 188 Cal.App.3d 952, 968.) To the extent Frank and Freedus's argument is based simply on State Fund's alleged error in failing to address the allegations in Frank and Freedus's complaint, we note that those allegations fail to specify any additional extrinsic evidence. ■ While in defending against a demurrer, a party may rely on the allegations of the complaint which must be accepted as true (here, that such extrinsic evidence existed) (see *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]), in defending against a summary judgment motion, the opposing party asserting a material factual dispute must present the facts through declarations or affidavits; a mere assertion in a complaint that such evidence exists is not sufficient to raise a

---

[7]Frank and Freedus cite only two declarations by their attorneys stating the attorneys cooperated fully with State Fund's auditor in January 1994. Other evidence in the record indicates State Fund paid $60,000 as recommended by its auditor following the January 1994 meeting with the defense attorneys and was negotiating with the defense attorneys about the payment of additional fees at the time the cross-complaint was filed. Frank and Freedus cite no evidence either disputing this payment or the continuing negotiations.

material issue of fact meriting a trial. (See *Sachs* v. *Exxon Co., U.S.A.* (1992) 9 Cal.App.4th 1491, 1496 [12 Cal.Rptr.2d 237].)

We conclude Frank and Freedus have failed to show there was any potential for coverage under the State Fund policy giving rise to a duty to defend. The trial court properly granted summary judgment in favor of State Fund.

DISPOSITION

The judgment is affirmed.

Work, J., and Benke, J., concurred.