**Rickey P. ADAMS**

v.

**PRO SOURCES, INC. and North River Insurance Company**

No. CIV.A.01–601–D.

United States District Court, M.D. Louisiana.

Oct. 9, 2002.

Richard Paul Bullock, Baton Rouge, LA, Gregory S. Johnson, Bullock & Johnson, Baton Rouge, LA, for Plaintiff.

David A. Bowling, Douglas R. Kraus, Wilson & Bowling, New Orleans, LA, T. Tucker Hobgood, Atlanta, GA, for Pro Source, Inc.

G. Benjamin Ward, Phelps, Dunbar, L.L.P., New Orleans, LA, for North River Insurance Co.

### RULING ON MOTION FOR SUMMARY JUDGMENT AND ORDER

BRADY, District Judge.

This matter is before the Court on cross motions for summary judgment (docs. 18 & 28) filed by North River Insurance Company ("North River") and Pro Sources, Inc. ("Pro Sources") respectively. Both motions for summary judgment have been opposed. There is no need for oral argument. This case was originally filed in Louisiana state court and removed to this Court under 28 U.S.C. 1441. Subject matter jurisdiction exists pursuant to: (1) 28 U.S.C. § 1331, federal question jurisdiction; and, (2) 28 U.S.C. § 1332, diversity jurisdiction.

This insurance coverage dispute arises from an employment discrimination and retaliation lawsuit (the "underlying lawsuit") filed by Rickey P.Adams ("Adams") against Pro Sources. Adams alleges that not only was he subject to an unlawful hostile environment under federal and state employment discrimination laws, but also that Pro Sources defamed him in retaliation for complaining about the discriminatory treatment that Adams suffered while employed at Pro Sources. At issue for the purposes of the cross motions for summary judgment is whether North River owes a duty to defend or indemnify Pro Sources in this case because of an employ-

ment-related practices exclusion in a commercial general liability insurance policy.

## I. FACTUAL BACKGROUND

■ The material facts necessary for a decision are not in dispute. According to the complaint in the underlying lawsuit, Adams was employed by Pro Sources as a truck driver from November 1999 through February 2000. Although Pro Sources suggests in its motion for summary judgment and supporting documentation that Adams voluntarily terminated his employment with Pro Sources on February 23, 2000, the complaint alleges that the actual termination date was March 1, 2000.[1]

The primary basis of Adams' complaint is that he was subject to a hostile work environment under federal and state anti-discrimination laws.[2] Adams' complaint alleges that on or about February 23, 2000, Adams filed a discrimination complaint internally with Pro Sources. Adams also alleges that he was subject to unlawful retaliation under federal and state anti-discrimination laws, or alternatively, that Pro Sources defamed him when Pro

Sources updated an online database system ("DAC") with information surrounding Adams' final day with Pro Sources. DAC is an information system which allows employers in the trucking industry to satisfy their legal obligation imposed by regulations imposed by the Federal Motor Carrier Safety Administration, a division of the United States Department of Transportation, concerning former employees to prospective employers.

■ North River issued a Commercial General Liability Insurance Policy (the "Policy") to Pro Sources that provides several different coverages, including personal and advertising injury coverage. The Policy's coverage is subject to a number of exclusions. The relevant exclusion [3] for the purposes of this decision is the "Employment–Related Practices Exclusion." The language of the Employment–Related Practices Exclusion is as follows:

This insurance does not apply to:

"Personal and advertising injury" to:

 (1) A person arising out of any:

 (a) Refusal to employ that person;

---

1. The law is clear that the scope of the Court's inquiry for determining whether a duty to defend exists under an insurance policy begins and ends with the language on the face of the complaint in the underlying lawsuit and the language of the insurance policy itself. *See Oak Ridge Park, Inc. v. Scottsdale Ins. Co.*, 1999 WL 731417, 1999 U.S. Dist. LEXIS 14645 at \*12 n. 6; *Percy v. Safeguard Ins., Co.*, 460 So.2d 724, 727 (La.Ct.App.3d Cir.1984)(citing *Jennings v. La. & S. Life Ins. Co.*, 280 So.2d 297, 300 (La.Ct.App. 1st Cir. 1973)); *Yount v. Maisano*, 627 So.2d 148, 153 (La.1993).

2. The specific statutes that Adams bases his hostile work environment claim upon are: (1) Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq.; (2) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*; and (3) the Louisiana Employment Discrimination Act, La.Rev.Stat. 23:301, *et seq.*

3. Knowing publication of a defamatory statement is also excluded under the Policy. However, Adams' complaint alleges an alternate cause of action for defamation based on a negligence theory. In order to find that North River has a duty to defend, this Court only has to find that the complaint discloses a possibility of a covered claim. *See Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir.1992)(citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 838 (La.1987); *Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir.1988)). Thus, because the tort of defamation in Louisiana permits a cause of action to be brought when the publication of a defamatory statement was merely negligent rather than knowing, *see Fitzgerald v. Tucker*, 737 So.2d 706, 715–16 (internal citations omitted), the Policy's "knowing publication of a defamatory statement" exclusion is inapplicable.

(b) Termination of that person's employment; or

(c) Employment related practices, policies, acts, or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person....

North River argues that Adams' employment discrimination claims, retaliation claim, and the defamation claim are clearly excluded from coverage under the Policy due to the Employment–Related Practices Exclusion. Pro Sources argues that the Employment–Related Practices Exclusion was meant to apply only to those acts coinciding with the period of employment, and because Adams' claims arose after he terminated his employment with Pro Sources, North River has a duty to defend and indemnify Pro Sources in the underlying lawsuit.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact, and therefore, that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the burden at trial rests on the non-movant, as it does here, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case. *See id.* The movant may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case. *Id.*

Although this Court considers the evidence in the light most favorable to the non-movant, the non-movant may not merely rest on allegations set forth in the pleadings. Instead, the non-movant must show that there is a genuine issue for trial. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-movant's burden. *See Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996) If, once the non-movant has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-movant, summary judgment will be granted. *See Celotex,* 477 U.S. at 322; *see also* Fed. Rule Civ. P. 56(c).

## III. ANALYSIS AND CONCLUSIONS

### A. Duty to Defend

 In Louisiana, there are a few basic rules regarding an insurer's obligation to defend its insured. First, an insurer's obligation to defend suits against its insured is broader than its liability for damage claims, and that duty to defend is determined by the allegations in the injured plaintiff's petition. *See Am. Home Assurance Co. v. Czarniecki,* 255 La. 251, 230 So.2d 253, 259 (La.1969). Second, insurers are obligated to provide a defense unless the petition unambiguously excludes coverage. *Id.* Third, while the insured bears the burden of proving the existence of the policy and coverage, *i.e.* the "requirements" for coverage, *see Tunstall v. Stierwald,* 809 So.2d 916, 921 (La.2002)(citing *Collins v. New Orleans Pub. Serv., Inc.,* 234 So.2d 270 (La.Ct.App. 4th Cir. 1970)), the insurer bears the burden of proving the existence of policy limits or exclusions. *See Tunstall,* 809 So.2d at 921 (citing *Mass. Protective Ass'n v. Ferguson,* 168 La. 271, 121 So. 863 (La.1929)). Finally, any ambiguity in the insurance contract is construed in favor of the insured. *See Percy v. Safeguard Ins., Co.,* 460 So.2d at 727 (citing *Jennings v. La. & S. Life Ins. Co.,* 280 So.2d at 300).

■ With these basic rules in mind, this Court must consider whether a duty to defend appears evident after looking at the faces of the complaint in the underlying lawsuit and the Policy. *See Alert Centre,* 967 F.2d at 163. If this Court is able to find that Adams' complaint in the underlying lawsuit discloses even a possibility of a single covered claim, North River must defend all of the claims against Pro Sources in the underlying lawsuit even if some of those claims are clearly excluded from coverage. *See Alert Centre,* 967 F.2d at 163–64 (citing *Montgomery Elevator Co. v. Building Engineering Servs. Co., Inc.,* 730 F.2d 377, 382 (5th Cir.1984)). Because whether Pro Sources has established the necessary requirements for coverage has not been raised as an issue in this dispute, this Court will assume that those requirements have been established and will focus on the existence of any applicable and unambiguous exclusion.

■ The salient issue here is whether Adams' defamation claim based upon Pro Sources' negligent publication of information to DAC is clearly excluded from coverage under the Policy by virtue of the Employment–Related Practices Exclusion. Adams' claims under federal and state anti-discrimination laws based on the hostile work environment he was allegedly subjected to while employed at Pro Sources,[4] including the retaliation claims, are clearly excluded under the Employment–Related Practices Exclusion by its

plain and unambiguous language excluding claims based on harassment and discrimination. *See Lawson v. Straus,* 673 So.2d 223, 225–26 (La.Ct.App. 4th Cir.1996)(assuming without deciding that an insurance policy exclusion's reference to harassment and discrimination excluded claims brought under Title VII and citing with approval *EEOC v. So. Publishing Co.,* 894 F.2d 785, 789 (5th Cir.1990)).

Louisiana courts have yet to squarely address whether a post-employment statement that is alleged to be defamatory would be excluded by an employment-related practices exclusion like the one in question here, although post-employment statements have been found to be in the "course of employment" under similar exclusion when made in the workman's compensation context. *See 511 Bourbon Street Corp. v. First Financial Ins. Co.,* 701 So.2d 1088, 1090 (La.Ct.App. 4th Cir. 1997). Despite this paucity of binding precedent, several other courts have squarely addressed this issue under state insurance laws and rules of policy language construction that are very similar to those found in Louisiana.[5]

In *Frank and Freedus v. Allstate Ins. Co,* a California state appeals court determined that post-employment remarks made about an employee who was suing his former employer on wrongful termination, federal and state anti-discrimination, and state law defamation grounds were clearly "employment-related," and

---

4. *See* Adams' amended Complaint, paras. 4 & 5 (alleging a hostile work environment and that Adams' manager told Adams that "he [the manager] did not want to hire blacks....").

5. *See e.g., Frank and Freedus v. Allstate Ins. Co.,* 45 Cal.App.4th 461, 52 Cal.Rptr.2d 678, 683–84 (Cal.Ct.App.1996)(stating that under California law, an insurance company's duty to defend is broader than the duty to indemnify, a duty to defend is triggered by the exis-

tence of potential liability based on facts pleaded on the face of a complaint, and that any ambiguity in the policy is construed against the insurer); *HS Servs. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642, 644–45 (9th Cir.1997)(same); *Weinstein Supply Corp. v. Home Ins. Cos.,* 1000 WL 310590, 1999 U.S. Dist. LEXIS 6661 at *6–7 (E.D.Pa.1999)(stating same under Pennsylvania law); *Berman v. Gen. Accident Ins. Co.,* 176 Misc.2d 13, 671 N.Y.S.2d 619, 623 (N.Y.Sup.Ct.1998)(stating same under New York law).

thus excluded under the employment practices exclusion of a commercial general liability policy. 52 Cal.Rptr.2d at .685. Crucial to this determination was the court's finding that the term "employment-related," was not ambiguous even though it was not specifically defined by the policy. *See id.* (stating that "[t]he term is not technical....[i]t is used in its ordinary sense, i.e., related to employment....[and] it modifies the specified acts (including defamation) [and its] clear meaning is coverage for...employment-related defamation."). Because the allegedly defamatory statement was made in the context of the former employee's employment and directed toward his performance during employment, the California court found the defamation "clearly employment related." *See id.*

The Ninth Circuit distinguished the facts of *Frank and Freedus* in *HS Servs.*, and concluded that when post-employment defamatory remarks were made about a former employee who became a competitor, the relationship between the remarks and the employment context were too "indirect and attenuated" to be excluded under an employment practices exclusion. *See HS Servs.*, 109 F.3d at 646. Although the Ninth Circuit implicitly approved of the result in *Frank and Freedus*, it found statements regarding the reason the former employee now competitor was fired were not part of or directly and proximately related to that employee's firing because the cause of the remarks were in response to the employee's comments in the marketplace regarding his former employer's financial condition. *Id.* at 647. The dissent took issue with this result, and stated that "the facts of this case are materially indistinguishable from *Frank and Freedus*,....and would hold that the defamation arose out of an employment related act" because the statements were directed to other employees of the employer and but for the former employee's employ-

ment, the defamation would not have occurred. *See HS Servs.* at 648.

In *Berman v. Gen. Accident Ins. Co. of Am.*, the New York Supreme Court of New York County mirrored the analysis of *Frank and Freedus* and determined that statements made about a former employee that assessed her performance and provided an explanation of why she was fired fell squarely within the employment-related practices exclusion for specified employment related practices such as evaluation and defamation. *See Berman*, 671 N.Y.S.2d at 623. Furthermore, the New York court refused to accept the argument that the exclusionary language in question should be read as limited to injuries sustained only while the employee is still employed by stating that such an argument is "semantically unreasonable and unacceptable." *Id.* (citing *Loyola Marymount Univ. v. Hartford Accident & Indem. Co.*, 219 Cal.App.3d 1217, 271 Cal.Rptr. 528, 531 (Cal.Ct.App.1990)).

Considering a "Personnel Practices Exclusion" nearly identical to the Employment Practices Exclusion at issue in this case, the United States District Court for the Eastern District of Pennsylvania concluded that coverage for allegedly defamatory remarks that were specifically alleged to arise from an employee's unlawful and discriminatory termination of employment as well as unlawful discrimination was clearly and unambiguously excluded. *See Weinstein Supply Corp., v. Home Ins. Cos.*, 1999 WL 310590, 1999 U.S. Dist. LEXIS 6661 T *10–11 (E.D.Pa.1999). The court found the fact that the remarks were made after the employee was terminated irrelevant because the complaint in the underlying lawsuit alleged that the defamatory remarks were made to cover up the "true invidiously discriminatory reasons for discharge," or alternatively, in retaliation against the employee for filing a

charge of discrimination against the employer. *See id.*

The above cases illustrate the following conclusions: (1) the phrase "employment-related practices" or "personnel practices" even though undefined in a commercial general liability policy is not per se ambiguous; (2) an alleged defamatory statement made after an employment relationship has ended can be excluded under an "employment-related practices exclusion"; (3) whether such a statement is excluded depends on whether the statement is made in the context of employment and describes a former employee's performance. In reaching these conclusions, the courts considered state insurance law, rules of construction, and policy language similar to that found in this case. Furthermore, the available decisions under Louisiana law that consider employment-related practices exclusions, even though under slightly different factual circumstances, suggest that a Louisiana court would come to the same conclusions. *See Lawson,* 673 So.2d at 226–27 (interpreting a "personnel practices" exclusion and concluding that such practices "refers to the usual dealing of employers with employees"); *Security Indus. Ins. Co. v. CIGNA Property & Cas. Co.,* 1997 WL 403415, 1997 U.S. Dist. LEXIS 10544 at *5–*9 (E.D.La.1997)(reviewing various Louisiana state decisions and concluding that "any injury suffered by an employee in the course of her employment was meant to be excluded under a CGL [ commercial general liability poli-

cy]" and that the definition of "course of employment" is broadly interpreted).

Thus, after considering the above general conclusions, the facts of this case, and relevant Louisiana law, even under the most liberal construction of Adams' amended complaint, this Court cannot avoid coming to the conclusion that the alleged defamation was made in the context and course of Adams' employment. The alleged defamatory statement input into DAC, regardless of whether this statement is ultimately found to be defamatory or not, certainly described Adams' performance as an employee on his last day of employment. Moreover, Pro Sources admits that it was required by law to make a statement describing Adams' performance, entering data into DAC was its normal and existing practice in making the required statements regarding its employees' performances, and prospective employers review the content of DAC when making their hiring decisions. That Adams was no longer an employee or that he voluntarily terminated [6] his employment relationship with Pro Sources prior to this statement being input into DAC is irrelevant, as it is abundantly clear from the circumstances that this allegedly defamatory statement was made in the course of Adam's employment and part of the normal and existing employment practices of Pro Sources. Therefore, this Court finds that the Policy's "Employment–Related Practices Exclusion" unambiguously ex-

---

**6.** Pro Sources makes the unpersuasive argument that the *Frank and Freedus, HS Servs.,* Weinstein Supply, and *Berman* cases are inapplicable because they all involved a claim for wrongful termination as well as defamation. *See* Pro Sources' Memorandum in Opposition to the Motion for Summary Judgment, pgs. 5–10. This Court does not believe that the phrase "termination" was a controlling issue in those cases, because any bodily injury arising from "termination" itself was

expressly excluded by the policies in question. *See Frank and Freedus* at 683–84; *Weinstein Supply* at *9; *Berman* at 622. The relevant and guiding issue in those cases, which is applicable to this Court's analysis of the law in this case, was whether the exclusion for "employment-related practices" or "personnel practices" was ambiguous, and when could a postemployment statement that was alleged to be defamatory be excluded under such an exclusion.

cludes coverage for the claims raised by Adams in the underlying lawsuit.

### B. Duty to Indemnify

Under *West v. Bd. of Comm'rs of Port of New Orleans,* this Court's determination that North River has no duty to defend Pro Sources in the underlying lawsuit necessarily requires this Court to conclude that North River has no duty to indemnify Pro Sources in the event that Pro Sources is found liable in the underlying lawsuit. *See* 591 So.2d 1358, 1360 (La.Ct.App. 4th Cir.1991).

Accordingly, the motion by North River for summary judgment (doc. 18) is hereby GRANTED. The cross-motion by Pro Sources for summary judgment (doc.28) is hereby DENIED.