Affirmed and Memorandum Opinion filed November 21, 2006








Affirmed and Memorandum Opinion filed November 21, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00229-CV

____________

 

SHIPSIDE CRATING COMPANY, INC., Appellant

 

V.

 

TRINITY UNIVERSAL INS. CO., Appellee

 



 

On Appeal from the 295th
District Court

Harris County, Texas

Trial Court Cause No. 04-38858

 



 

M E M O R A N D U M   O P I N I O N

In this insurance coverage dispute, Shipside Crating
Company, Inc. (AShipside@) contends that
its insurer, Trinity Universal Ins. Co. (ATrinity@), breached its
contractual duty to defend and indemnify.  The trial court granted summary
judgment in favor of Trinity and entered a take-nothing judgment.  We affirm
the trial court=s judgment.








Background

The relevant facts necessary to dispose of the issue are
not in dispute.  John Michael Baker (ABaker@), a truck driver,
sued his former employer, Shipside, for claims of libel, slander, negligence,
intentional infliction of emotional distress, tortious interference with
contract, and tortious interference with prospective contracts.  In the
complaint, Baker alleged that Shipside filed a false report to DAC services, an
organization maintaining an online database of drug and alcohol test results,
in response to a request by Baker=s then employer,
Quality Carriers Inc. (AQuality Carriers@).  The report
allegedly stated that Baker had refused a drug test while working for
Shipside.  Baker further complained that as a result of the report, he lost his
job with Quality Carriers and was no longer employable as a driver with any
major trucking company.    

At the time of the alleged false report, Shipside was the
named insured under an insurance policy issued by Trinity.  Shipside placed
Trinity on notice of the lawsuit and Trinity responded initially with a
reservation of rights letter.  Subsequently, Trinity denied having a duty to
defend or to indemnify Shipside in the litigation with Baker.  After settling
the underlying litigation with Baker, Shipside sued Trinity for failure to
defend and indemnify.  Trinity filed a motion for summary judgment which was
ultimately granted by the trial court.  

Analysis








In its sole issue, Shipside argues that the trial court
erred in granting summary judgment for Trinity because Trinity had a duty to
defend and indemnify Shipside in the underlying litigation with Baker. 
Shipside contends that the Employment Related Practices Exclusion (AERPE@) in its policy
with Trinity does not apply to those underlying claims.  The parties agree that
the underlying claims would qualify as a Apersonal injury@ offense under the
terms of the policy, thus generally requiring Trinity to defend those claims.[1] 
The only question is whether the ERPE clause applied to exclude the underlying
litigation from coverage under the policy.

A motion for summary judgment is properly granted when the
motion and summary judgment evidence show that there is no genuine issue of
material fact and that the moving party is entitled to judgment as a matter of
law on the issues expressly set out in the motion or response.  Tex. R. Civ. P. 166a(c).  We review a
trial court=s granting of a summary judgment de novo,
taking all evidence favorable to the nonmovant as true and resolving every
doubt, and indulging every reasonable inference, in the nonmovant=s favor.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).








To determine whether an insurer has a duty to defend its
insured, Texas courts apply the Aeight corners@ rule.  King v.
Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002); Nat=l Union Fire Ins.
Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).  Under
the Aeight corners@ rule, we compare
the allegations in the pleadings implicating the insured to the terms of the
insurance policy.  King, 85 S.W.3d at 187; Nat=l Union Fire, 939 S.W.2d at
141.  A liability insurer is obligated to defend the insured if the facts
alleged in the pleadings would give rise to any claim within the coverage of
the policy.  Utica Nat=l Ins. Co. v. Am.
Indem. Co., 141 S.W.3d 198, 201 (Tex. 2004); Nat=l Union Fire, 939 S.W.2d at
141.  When determining the insurer=s duty to defend,
we interpret the allegations liberally in favor of the insured.  King,
85 S.W.3d at 187; Nat=l Union Fire, 939 S.W.2d at
141.  Any doubt as to whether the insurer has a duty to defend is resolved in favor
of the insured.  King, 85 S.W.3d at 187; Nat=l Union Fire, 939 S.W.2d at
141.  

With respect to exclusionary clauses relied upon by the
insurer to avoid coverage, the insurer bears the burden of showing that the exclusion
applies.  Utica, 141 S.W.3d at 202, 207; Altivia Corp. v. Greenwich
Ins. Co., 161 S.W.3d 52, 54 (Tex. App.CHouston [14th
Dist.] 2004, no pet).  Courts must adopt the insured=s construction of
an exclusion whenever it is reasonable, even where the construction urged by
the insurer appears to be more reasonable or a more accurate reflection of the
parties= intent.  Balandran
v. Safeco Ins. Co., 972 S.W.2d 738, 741 (Tex. 1998); Betco Scaffolds
Co., Inc. v. Houston United Cas. Ins. Co., 29 S.W.3d 341, 344 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).

The parties properly focus on whether Shipside=s alleged
submission of Baker=s drug test results to DAC was Aemployment-related@ as that phrase
was meant to be understood under the terms of the policy.  The ERPE at issue in
this case stated:

This insurance does not apply to:

APersonal injury to:

(1)     A person arising out of any:

(a)     Refusal to employ that person;

(b)     Termination of that person=s employment; or

(c)     Employment-related practices, policies, acts
or omissions, such as coercion, demotion, evaluation, reassignment, discipline,
defamation, harassment, humiliation, or discrimination directed at that person
. . . .








The policy does not further define the phrase Aemployment-related.@  Fortunately,
courts have previously interpreted a similar, if not identical exclusionary
clause in the context of an insurer=s duty to defend
against a former employee=s lawsuit.  See Pa. Nat=l Mut. Cas. Ins.
Co. v. Kitty Hawk Airways, No. CA 3‑87‑3033‑R,1990 WL 757369
(N.D. Tex., Sept. 4, 1990) (finding that an insurance policy did not cover a
former employee=s defamation claims against the insured
because the clause excluded personal injury claims Asustained by any
person as a result of an offense directly or indirectly related to the
employment of such person@), rev=d on other grounds, 964 F.2d 478
(5th Cir. 1992); Altivia, 161 S.W.3d at 54 (holding that defamation
claims against the insured were Aemployment related
acts@ subject to
exclusionary clause); Adams v. Pro Sources, Inc., 231 F.Supp.2d 499
(M.D. La. 2002) (finding that the insured=s act of updating
a database regarding a former employee=s final day of
work was made in the context of the employee=s employment).








In Kitty Hawk, Pollard, a former employee, sued
Kitty Hawk for defamation after he had been fired from his new position with
Northwest Airlines.  Kitty Hawk, 1990 WL 757369, at *1.  Pollard alleged
that Kitty Hawk, in response to a routine employment inquiry by Northwest,
informed Northwest that, during Pollard=s tenure at Kitty
Hawk, Pollard had been admonished for drinking alcohol at a time when he was
supposed to be available for flight duty.  Pollard further alleged that he was
fired from Northwest because of this defamatory statement.  Kitty Hawk had an
insurance policy with Pennsylvania National which covered personal injury
liability arising out of the company=s business.  The
policy also contained an exclusion which stated:    AThe policy does
not apply . . . to personal injury sustained by any person as a result of an
offense directly or indirectly related to the employment of such person by the
named insured . . . .@  Id.  In holding that the claims
against Kitty Hawk arose directly or indirectly from Pollard=s employment, the
court found that Athe claims were based on alleged
defamatory statements in a letter written about Pollard during his employment
with Kitty Hawk. Accordingly, the Court finds that the statements do fall
within [the employment-related exclusion] of the policy.@  Id. at
*2.[2] 
The court did not elaborate on its basis for finding that the alleged liability
was directly or indirectly related to Pollard=s employment, but
it was clear, based on the facts, that the content of the statement (Pollard=s behavior in
relation to his duties) and the context (in response to an inquiry about
Pollard=s employment
history) were both employment related.  See id. at *1.

Previously before this court in Altivia, a former
employee, Hidrogo, sued Altivia for wrongful termination and defamation.   Altivia,
161 S.W.3d at 53.  Hidrogo contended that Altivia had slandered and defamed him
to other potential employers with allegedly false reports concerning Hidrogo=s accident history
at Altivia.  The policy between Altivia and its insurer had a similar exclusion
clause to the one in this case excluding personal injury Aarising out of any
termination of a person=s employment or >employment related= acts or
omissions, such as defamation (the >ERP exclusion=).@  Id. at
54.  In finding that the exclusion clause applied to the alleged defamatory
statements, this court held that, ATo the extent [the
statements] were alleged to be made in response to routine employment inquiries
to Altivia by other prospective employers, they would be employment related
acts subject to the ERP exclusion.@  Id.  We
therefore focused on the context of the statements madeCin response to Aroutine employment
inquiries@Cin holding that the statements were
employment related.  Id. at 54.  It should be noted that the content of
the statementsCHidrogo=s driving record
as a truck driverCalso was employment related.  See id.

A Louisiana federal district court examined an
employment-related exclusion clause in the context of facts closely resembling
the underlying lawsuit in this case.  See Adams, 231 F.Supp.2d 499.  In Adams,
a truck driver sued Pro Sources (his former employer) for, among other claims,
defaming him by updating DAC with information about his final day with Pro
Sources.  Id. at 501.  The insurance policy at issue had an exclusion
clause using the same Aarising out of@ and Aemployment-related
practices@ language as in the Shipside-Trinity policy.  Id.
at 501-02.  The court found that the alleged defamatory statement was excluded
from the scope of the insurance policy.  Id. at 505.  As support for its
holding, the court stated that: 








[The allegedly defamatory statement] certainly described Adams= performance as an employee on his
last day of employment.  Moreover, Pro Sources admits that it was required by
law to make a statement describing Adams= performance, entering data into DAC was its normal and
existing practice in making the required statements regarding its employees= performances, and prospective
employers review the content of DAC when making their hiring decisions. That
Adams was no longer an employee or that he voluntarily terminated his
employment relationship with Pro Sources prior to this statement being input
into DAC is irrelevant, as it is abundantly clear from the circumstances that
this allegedly defamatory statement was made in the course of Adam=s employment and part of the normal
and existing employment practices of Pro Sources. 

 

Id.  In other words,
the court found that both the content of the statement and the context in which
the statement was made were employment related. 

In deciding whether an insurer has a duty to defend, we
compare the pleadings in the underlying suit against the insured with the terms
of the insurance policy to determine whether those pleadings give rise to any
claims covered by the policy.  See King, 85 S.W.3d at 187; Nat=l Union Fire, 939 S.W.2d at
141.  The cases discussed above persuade us to evaluate the content of the
statements alleged in the underlying lawsuit and the context in which they were
made to determine if the statements are Aemployment
related,@ such that an
employment-related exclusion would apply.  Furthermore, our previous holding in
Altivia sets clear precedent that, to the extent any statements alleged
were made Ain response to routine employment inquiries@ by prospective
employers, the statements are employment related.  See Altivia,
161 S.W.3d at 54.  It is with this guidance that we evaluate the facts in our
case.








The report submitted by Shipside to DAC allegedly stated
that Baker had refused a drug test while working for Shipside.  The result of
Baker=s drug test was
clearly related to his employment with Shipside as a likely condition of
continued employment.  A drug test is specifically relevant to an employer of
truck drivers, such as Shipside, because of the liability that might result
from a driver driving under the influence of drugs.  Therefore, the content of
the report was employment related.  Additionally, the context of Shipside=s report was
employment related.  Shipside submitted the report in response to a request by
Baker=s new employer,
Quality Carriers.  Quality Carriers= request for the
drug test results was a Aroutine employment inquiry@ because
Department of Transportation regulations require these types of employers to
request such information from a former employer.  See 49 C.F.R. ' 382.413; cf.
Adams, 231 F.Supp.2d at 505 (finding that updating DAC with information
about the employee=s final day of work was a routine
employment inquiry).  This court has held that statements made in response to
routine employment inquiries are employment related.  Altivia, 161
S.W.3d at 54.  Shipside contends that the report was made in the context of
complying with federal regulations, not in responding to an employer request.[3] 
However, the response required under federal law was triggered only when
Quality Carriers requested the information.  See 49 C.F.R. ' 40.331 (stating
that the employer is required to release the information only upon request). 
For these reasons, we find that the report submitted by Shipside was employment
related as contemplated by the exclusion in the policy with Trinity.








The cases on which Shipside relies are not applicable to
the facts at hand.  In Acceptance Insurance Co. v. Lifecare Corp., 89
S.W.3d 773 (Tex. App.CCorpus Christi 2002, no pet.), the
underlying suit alleged that Lifecare was negligent in failing to accurately
respond to an information request by a prospective employer of a former
employee of Lifecare.  The plaintiff in the underlying suit alleged that this
inaccurate response contributed to the hiring of the employee who subsequently
sexually assaulted the plaintiff.  Id. at 777.  In deciding whether an
employment-related exclusion applied, the Thirteenth Court of Appeals found
that Lifecare=s  response to the information request was not
employment related.  Id. at 786.  Acceptance is distinguishable
for several reasons.  First, Lifecare was being sued by a third-party
(non-employee of Lifecare), as opposed to our case in which the underlying
lawsuit was brought by a former employee of Shipside.  Also, the Acceptance
court focused on whether the underlying pleadings alleged an employment-related
Aevaluation@ in deciding if
the exclusion applied, a factor not relevant in this case.  See id.
at 785-87.  Finally, even though the court=s findings
partially relied on the fact that the employment relationship had ended when
the alleged negligence occurred, the court specifically stated that this
consideration was not as significant when defamation is the alleged act.  Id.
at 787 (AWhen the
employment ended, the activity is less likely to be employment related except
perhaps in some defamation or termination circumstances . . . .@).  Other cases
have found the fact that alleged defamatory statements were made after the
employment relationship had ended to be an insignificant factor in determining
whether those statements were employment related.  See Kitty Hawk,
1990 WL 757369, at *2 (finding that the defamatory statements were employment
related despite those statements having been made after the employment had
ended); Altivia, 161 S.W.3d at 54 (holding post-employment defamatory
statements were employment related).  Acceptance is therefore
distinguishable from this case.  








Shipside also relies on Waffle House, Inc. v. Travelers
Indemnity Co., 114 S.W.3d 601 (Tex. App.CFort Worth 2003,
pet. denied).  We first note that, in Altivia, this court already
distinguished Waffle House and disapproved of its analysis.  See Altivia,
161 S.W.3d at 54.  In Waffle House, a former employee sued Waffle House
alleging that its executives had defamed her.  The executives allegedly
informed Grandy=s, the former employee=s current client,
that she had been dismissed from Waffle House for poor performance, that she
was vindictive, and that she had a personal vendetta against Waffle House.  Waffle
House, 114 S.W.3d at 603.  The court held that an employment-related
exclusion did not apply to the insurer=s duty to defend
the underlying lawsuit.  Id. at 610.  This court noted that the Waffle
House holding was based on the alleged defamatory statements having been
made Aout of Waffle
House=s attempt to
prevent its employees from leaving rather than being related to the plaintiff=s termination,@ thereby creating
some sort of self-protection exception to the employment-related exclusion.  Altivia,
161 S.W.3d at 54.  We disagreed with this analysis, holding that Aeven statements
made for the purpose of preventing employees from leaving are
employment-related acts@ and that the employment-related act does
not have to Aarise out of the plaintiff=s termination.@  Id.  We
reiterate our disapproval of the Waffle House court=s reasoning and
refuse to apply it to our facts.  

Because we find that Trinity has no duty to defend
Shipside, we need not reach the issue of whether Trinity has a duty to
indemnify.  See Collier v. Allstate County Mut. Ins. Co., 64
S.W.3d 54, 62 (Tex. App.CFort Worth 2001, no pet.).  We overrule
Shipside=s sole issue.

We affirm the judgment of the trial court.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 21, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.

 

 

 

 









[1]  The ACoverage B@ agreement details Trinity=s general requirement to defend Apersonal injury@
claims:

We
[Trinity] will pay those sums that the insured becomes legally obligated to pay
as damages because of Apersonal injury@ or
Aadvertising injury@ to
which this insurance applies.  We will have the right and duty to defend the
insured against any Asuit@ seeking those
damages.





[2]  The Fifth Circuit Court of Appeals  reversed the
District Court on other grounds, but explicitly approved of the lower court=s holding regarding the application of the
exclusionary clause.  See Pa. Nat'l Mut. Casualty Ins. Co. v. Kitty Hawk
Airways, 964 F.2d 478 (5th Cir. 1992) (ABased upon the plain language of the Pennsylvania
National‑Kitty Hawk policy, we agree with the district court‑Exclusion
(c) is unambiguous and Pollard=s claim falls
within this exclusion.@).  





[3]  Shipside makes this argument under 49 C.F.R. ' 40.331 which requires a former employer to release the results of a
former employee=s drug or alcohol tests upon request by an employer
(with the employee=s consent).