Filed 10/17/25  Barrie v. Sacramento Municipal Utility District CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AMADU BARRIE, | C098112 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-00270682-CU-OE-GDS) |
| v. | |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT et al., | |
| Defendants and Respondents. | |

This is an employment case involving claims for discrimination, retaliation, and hostile work environment in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)[1] and California's whistleblower statute (Lab. Code, § 1102.5).  Plaintiff Amadu Barrie appeals from the judgment entered after the trial

_____

[1] Undesignated statutory references are to the Government Code.

1

court granted summary judgment in favor of defendants Sacramento Municipal Utility District (SMUD) and Michael Meeks, the former manager of SMUD's security operations department.  Barrie argues reversal is required because the trial court (1) made erroneous evidentiary rulings, (2) applied the wrong legal standard in granting summary judgment, and (3) failed to "recognize" triable issues of material fact.  Finding no basis for reversal, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The claims in this employment case arise out of the purported disparate treatment of and retaliation against Barrie with respect to overtime and promotional opportunities at SMUD.  Additional background information relevant to the resolution of this appeal is set forth in the Discussion, *post*.

*The Parties*

In 1971, Barrie was born in Sierra Leone, a country in West Africa.  He emigrated to the United States in 1997.

SMUD is a public utility that provides electricity to Sacramento County.  In 2001, SMUD hired Barrie as an asset protection officer in its security operations department.  Barrie worked in that capacity for SMUD until 2012, when he became a dispatcher for the same department.

In June 2016, SMUD hired Meeks, who was born in Vietnam, to manage the security operations department.  Meeks served in that capacity for SMUD until early 2020.

At all relevant times (2016-2019), Barrie and Meeks were over the age of 40,  and Meeks was the hiring manager for the jobs for which Barrie applied that are the subject of this action.  Meeks was also responsible for removing Barrie from SMUD's threat assessment team, which occurred in June 2016, shortly after Meeks was hired by SMUD.  According to Meeks, Barrie and two others were removed from the threat assessment team because it was "downsized."

2

*SMUD's Overtime Policy*

During the relevant period, SMUD had a written overtime policy for employees in its security operations department. Under the policy, an employee could volunteer for overtime by putting their name on a list of eligible employees. When there was an opportunity for overtime, the supervisor of that shift referred to the list for an employee who worked the same shift but was scheduled to be off that day. If more than one employee was available for overtime, the employee with fewer opportunities to work overtime that quarter would be offered the overtime opportunity first. If no employee in the same shift was available to work overtime, the supervisor would refer to the eligibility list to offer the overtime opportunity to employees working other shifts.

SMUD's overtime policy had the stated purpose of allocating overtime opportunities "as equally as practicable" to "qualified volunteers." The policy provided that the manager of the security operations department (here, Meeks) was responsible for ensuring that overtime opportunities were offered equally to employees.

*Administration of the Overtime Policy*

In December 2016, Barrie sent an e-mail to his supervisors expressing his concern that overtime was not being "tracked properly," which he believed had resulted in missed opportunities for him to work overtime. At that time, Barrie did not claim or suggest that he was denied or missed overtime opportunities based on any protected characteristic such as ethnicity, race or age.

In March 2018, Barrie raised the same issue about overtime opportunities with his direct supervisor. This time, Barrie claimed that overtime opportunities had been unequally allocated on the basis of a protected status--race and/or national origin. An investigation into the matter revealed that 73 days involving overtime were not computed correctly or had some discrepancies; that is, an employee had worked overtime but it was not accounted for on the list tracking overtime. The record nonetheless reflects that

Barrie and the other SMUD dispatcher assigned to the same shift received the same number of overtime opportunities (19) from January 2018 to March 2018.

Following an investigation by SMUD's Fair Employment Office, human resources analyst Cheryl Griffin determined that overtime opportunities had not been improperly allocated based on any protected characteristic. Before reaching that conclusion, Griffin interviewed Barrie and others. When asked, Barrie stated "multiple times" that he did not believe overtime opportunities were being allocated "based on race, national origin or some other protected characteristic." Two other SMUD employees told Griffin the same thing.

*Barrie's Job Applications and SMUD's Hiring Process*

From 2018 to 2019, Barrie applied for several civil service positions with SMUD. Meeks and SMUD's human resources analyst Annie Gay worked together to fill those positions.

Gay was a member of SMUD's Talent Management Division, which was responsible for recruitment. Gay managed the hiring process for the SMUD jobs assigned to her, including two positions for which Barrie applied in 2018. This process included posting the job description, screening applicants, and providing candidate information to hiring supervisors. Gay also partnered with hiring managers such as Meeks to discuss candidate qualifications and assist in the hiring process, including the selection of the hiring panel, developing interview questions, and deciding which candidates to interview.

When positions became available in SMUD's security operations department during the relevant period, Meeks would notify all employees of the opportunity. SMUD's human resources department (e.g., Gay) would then provide Meeks with a matrix that identified the applicants and scored them based on their qualifications for the particular position. Although the matrix provided a total score for each applicant, it was not designed to identify the most qualified candidate. Rather, the matrix established

4

whether a candidate met the minimum qualifications for the position. After qualified applicants were identified, Meeks reviewed the list with Gay and then decided who should receive an interview. The hiring process included a panel interview in which Meeks was responsible for selecting panel members in consultation with Gay. Meeks had the authority to decide whether to participate in the panel interview.

In June 2018, Barrie applied for the physical security project manager position. Although Barrie was among the 10 qualified candidates Meeks identified for the position, Meeks did not select him or the other qualified internal candidate (Angelo Adams, who was a white male) to be interviewed. While Adams was placed back on the interview list after several of the final candidates withdrew their applications, Barrie was not. According to Meeks, Adams was put back on interview list because he had "some working knowledge of aspects of the job and had shadowed the individual who previously held the position." Meeks ultimately hired an external candidate based on his "more desirable" qualifications, including his high security clearance in the private and government sectors and his extensive security experience, similar to that of the employee whom he was replacing.

Barrie also applied for the security operations supervisor position on multiple occasions. The first time was in 2016, before he made his first complaint (via his December 2016 e-mail) to management about the allocation of overtime opportunities. The second time was in September 2018, after he made his second complaint about the same issue (in March of that year). Barrie was interviewed for the position following his second application but was not hired for the position. Instead, two other internal candidates who received higher scores from the interview panel, which did not include Meeks, were hired. Although Barrie did not have knowledge of their experience, he believed he was more qualified than the internal candidates who were hired, "in terms of experience and education." According to Meeks, he hired candidates "who were not only

5

qualified but also possessed leadership qualities and made positive contributions to better the department."

In July 2019, Barrie applied for the security investigator position. Although he received the highest score on the matrix and was interviewed, Barrie was not hired for the position. Instead, Meeks selected Lynetta Reece, a black woman who received the highest score from the interview panel, of which Meeks was not a part. Reece was a SMUD security operations supervisor with 16 years of investigative experience. By contrast, Barrie was a SMUD dispatcher with two years of investigative experience.

*Barrie's Allegations of Discriminatory Animus and Harassment Against Meeks*

According to Barrie, Meeks said condescending things to him about Africans on two or three occasions. During those conversations, one of which occurred at a threat assessment conference before Meeks was hired by SMUD (in June 2016), Meeks asked Barrie about civil wars in Africa and Barrie's political affiliation. Meeks also said that he believed "Africans were corrupt."

During his deposition, Barrie explained that he and Meeks talked about corruption in Africa and the civil war in Sierra Leone on two or three occasions. Barrie conceded that Meeks did not say anything "offensive" during those conversations. In response to further questioning, Barrie claimed that he could not recall anything that Meeks specifically said about the civil war in Sierra Leone. Instead, Barrie simply noted that Meeks was genuinely interested in what he "had been through," and that their conversations about the topic were "friendly."

In April 2018, during a conversation about the allocation of overtime opportunities at SMUD, Meeks told Barrie that he was "lucky to have a job." Although Meeks never explained what he meant by this comment and did not mention anything about Barrie's ancestry or country of birth, Barrie interpreted the comment to be directed towards his national origin, meaning that he was lucky to have a job because he was African.

6

*Barrie's Administrative Employment Discrimination Complaints*

In February 2019, Barrie filed a complaint for discrimination against SMUD with the Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission (EEOC) on the basis of race, national origin, and age. As part of his complaint, Barrie alleged that SMUD had unlawfully retaliated against him. In support of this claim, Barrie alleged that after he complained about being discriminated against, he was not hired for numerous positions he applied for and was denied overtime opportunities. Barrie claimed that he was qualified for the positions for which he applied and that individuals with lesser qualifications were hired instead.

In September 2019, Barrie received a right-to-sue letter. (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479.)

*Civil Action*

In December 2019, Barrie filed the instant employment action against SMUD and Meeks. The operative (second amended) complaint was filed in October 2020. It alleged four causes of action under FEHA and California's whistleblower statute: (1) retaliation (Gov. Code, § 12940, subd. (h); Lab. Code, § 1102.5); (2) disparate treatment--race, national origin, and age discrimination (Gov. Code, § 12940, subd. (a)); (3) failure to prevent harassment, discrimination, or retaliation (*id*., § 12940, subd. (k)); and (4) hostile work environment due to harassment based on race (*id*.,§ 12940, subd. (j)). The first three causes of action were only alleged against SMUD and the fourth cause of action was only alleged against Meeks.

The retaliation action was predicated on SMUD's denial of opportunities to Barrie to interview and be promoted to a supervisor position in retaliation for his complaints to management about "the violation of overtime policy and discriminatory hiring practices." The disparate treatment cause of action alleged that race, age, and/or national origin was a substantial factor in SMUD's denial of overtime and promotional opportunities to Barrie after he complained of discrimination to management and filed administrative

complaints with the DFEH and EEOC.  The failure to prevent cause of action was based on SMUD's purported failure to prevent discrimination and retaliation "at the hands of Human Resources and management[], namely Meeks."  The final cause of action alleged that Meeks harassed and discriminated against Barrie "based on his race by engaging in and permitting acts that created a hostile work environment."  Barrie claimed SMUD and Meeks retaliated against him because he reported "discrimination and unequal treatment on the job and filed a complaint with DFEH and EEOC."  Among other things, Barrie asserted that "jobs were given to others who were younger and junior ranked officers with less experience, training, and education than [him]."  He added that Meeks "constantly" said "condescending things about Africans," "would ask probing questions about civil wars [and] Africans being corrupt, and would "repeatedly question [his] political leanings."

*Motion for Summary Judgment*

In September 2022, SMUD and Meeks (collectively, defendants) moved for summary judgment or, in the alternative, summary adjudication.  As for the first and second causes of action--retaliation and disparate treatment in violation of FEHA--defendants argued summary judgment was warranted because Barrie could not establish that SMUD unlawfully discriminated or retaliated against him for engaging in protected activity.  They contended that Barrie could not establish a prima face case by producing evidence showing a causal link between the alleged protected activity and any adverse employment action.  Defendants further argued that, even if Barrie could establish a prima facie case, SMUD had legitimate, nonretaliatory and nondiscriminatory reasons for the alleged adverse employment actions and Barrie could not produce credible evidence showing unlawful pretext, that is, he could not demonstrate a triable issue by producing substantial evidence sufficient to permit a rational inference that SMUD's actual motive was discriminatory or retaliatory.  With respect to Barrie's claim for whistleblower retaliation, defendants argued that Barrie could not establish a prima facie case by

8

demonstrating that protected activity was a contributing factor in the alleged adverse employment actions, and that, even if Barrie could establish a prima facie case, the claim failed as a matter of law because there was clear and convincing evidence that SMUD would have taken the actions in question for legitimate, independent reasons even if Barrie had not engaged in protected activity. As for the third cause of action--SMUD's failure to prevent harassment, discrimination, or retaliation--SMUD asserted that this derivative claim failed because the other claims had no merit. Regarding the fourth cause of action--hostile work environment--defendants argued that this claim failed as a matter of law because, even if Meeks made the comments identified by Barrie, they were neither severe nor pervasive.

Barrie filed an opposition, contending that summary judgment was inappropriate because there were disputed issues of material fact; his argument principally relied on excerpts from his deposition and the lengthy declaration he executed. With only a few exceptions, Barrie objected to each and every paragraph of the declarations submitted by Meeks, Griffin, and Gay on the same exact grounds (e.g., hearsay, overbroad, lacks foundation).

In reply, defendants explained why, in their view, there were no triable issues of material fact precluding summary judgment. Defendants also pointed out that Barrie had failed to comply with the procedural rules governing summary judgment motions and, on that basis, urged the trial court to grant their motion. As for Barrie's evidentiary objections, defendants argued that they should be overruled for noncompliance with the California Rules of Court and because they lacked merit. Defendants filed their own objections to the evidence submitted by Barrie.

*Trial Court's Ruling*

In December 2022, after a hearing, the trial court granted summary judgment in favor of defendants. The court initially found that there were "multiple deficiencies" in Barrie's separate statement and opposition papers, including, but not limited to, that:

9

Barrie submitted "nearly entire deposition transcripts as exhibits" but did not "highlight the relevant testimony at all," Barrie's separate statement was improperly formatted and "generally fail[ed] to properly cite to evidence," and Barrie's motion papers failed to include proper evidentiary citations and contained irrelevant legal statements. However, "[d]espite the litany of formatting deficiencies," the court indicated it would consider Barrie's opposition to the extent feasible.

As for Barrie's evidentiary objections, the trial court stated: "[Barrie's] objections are procedurally problematic. [Barrie] objects to the Declarations of . . . Meeks, . . . Griffin, and . . . Gay in their entirety. [Barrie] asserts the-identical series of objections to each paragraph individually, although it is not clear whether [Barrie] objects to the exhibits attached to the declarations. [Barrie's] objections fail to comply with format requirements of [California Rule of court, rule] 3.1352(b),[2] as they are not referenced in the separate statement in opposition. Moreover, the objections are clearly boilerplate catchalls, as they are repeated for every paragraph. Accordingly, [Barrie's] objections are OVERRULED." (Fn. added.) The court sustained in part and overruled in part the various objections lodged by defendants, including sustaining multiple objections to Barrie's declaration. As for the merits, in a detailed analysis the court found no triable issue as to any material fact and that the claims alleged in the operative complaint failed as a matter of law.

*Appeal and Appellate Briefing*

Barrie filed a timely notice of appeal. The matter was fully briefed and assigned to this panel in May 2025.

---

[2] Further rule references are to the California Rules of Court.

## DISCUSSION

At the outset, we note that our review of this matter is significantly hampered by Barrie's deficient briefing in both the trial court and now on appeal, including improper record and legal citations and conclusory legal analysis. On appeal, it is particularly difficult to decipher Barrie's contentions in his opening brief due to his failure to coherently organize his arguments under proper headings as required by court rules. (Rule 8.204(a)(1)(B); see *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1831, fn. 4.) It is a fundamental rule of appellate procedure that arguments not properly presented may be deemed forfeited. (See *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201; *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294].) We nevertheless will attempt to address Barrie's contentions. However, we will disregard factual contentions that are not supported by accurate or proper citations to the record and legal arguments that are conclusory and not supported by reasoned legal analysis, including citation to pertinent authority. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597; *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) We will also disregard arguments made for the first time on appeal or in Barrie's reply brief. (See *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065, fn. 3 [as a general rule, points not addressed until a reply brief will not be considered by an appellate court]; *Magallanes de Valle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924 [theories not presented or fully developed in the trial court cannot be asserted for the first time on appeal from summary judgment].)

11

# I

## *Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

On a motion for summary judgment, a defendant must show "that one or more elements of the cause action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar, supra,* 25 Cal.4th at pp. 853-855.) Once the defendant has met that burden, it shifts to the plaintiff to show a triable issue of material fact exists as to the cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2).) The plaintiff may not rely on the allegations in his pleadings but must set forth the specific facts showing the triable issue of material fact. (*Ibid*.) Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id*., subd. (c).)

"The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra*, 25 Cal.4th at p. 850.) "Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Dollinger DeAnza Associates v. Chicago Title Ins. Co*. (2011) 199 Cal.App.4th 1132, 1144-1145.) In the employment discrimination context, an employee's "subjective beliefs . . . do not create a genuine issue of fact; nor do uncorroborated and self-serving

12

declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).)

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).) In doing so, "we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175.)

Our review is governed by a fundamental principle of appellate procedure, namely, that " '[a] judgment or order of the lower court is presumed correct,' " and thus, " 'error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Under this principle, plaintiff bears the burden of establishing error on appeal, even though defendants had the burden of proving their right to summary judgment before the trial court. (*Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.) For this reason, our review is limited to contentions adequately raised and supported in plaintiff's brief. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)

II

*Evidentiary Objections*

We first consider Barrie's contention that the trial court made erroneous evidentiary rulings that were prejudicial. As we next explain, we disagree.

13

A. *Standard of Review*

"In determining whether a triable issue was raised or dispelled, we must disregard any evidence to which a sound objection was made in the trial court, but must consider any evidence to which no objection, or an unsound objection, was made." (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 957.)

We apply the abuse of discretion standard when reviewing the trial court's rulings on evidentiary objections. (*Doe v. Software One, Inc.* (2022) 85 Cal.App.5th 98, 103; *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169.) " 'The party challenging a trial court's evidentiary ruling has the "burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. . . . We will only interfere with the lower court's judgment if appellant can show that under the evidence offered, ' "no judge could reasonably have made the order that he did." ' " ' " (*Butte Fire Cases*, at p. 1169.) "An 'erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*Daimler Trucks North America LLC v. Superior Court* (2022) 80 Cal.App.5th 946, 960.) "Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant." (*Paige v. Safeway, Inc.* (2022) 74 Cal.App.5th 1108, 1127.)

B. *Barrie's Evidentiary Objections*

We reject Barrie's initial contention that the trial court erred by "summarily" overruling all of his evidentiary objections. Although Barrie concedes there were "procedural oversights" in his summary judgment opposition papers, he insists the court's rejection of his objections in blanket fashion resulted in the denial of a "fair hearing" because the challenged declarations contained hearsay and lacked foundation.

"A party desiring to make objections to evidence in the papers on a motion for summary judgment must either:  [¶]  (1) Submit objections in writing under rule 3.1354; or (2) Make arrangements for a court reporter to be present at the hearing." (Rule 3.1352;

14

see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531-532 [a party that objects to evidence presented on a motion for summary judgment must either timely file separate written objections or object orally at the hearing].)

Rule 3.1354 sets forth the requirements for written evidentiary objections in summary judgment proceedings.  As relevant here, the rule states:  "All written objections to evidence must be served and filed separately from the other papers in support of or in opposition to the motion.  Objections to specific evidence must be referenced by the objection number in the right column of a separate statement in opposition or reply to a motion, but the objections must not be restated or reargued in the separate statement.  Each written objection must be numbered consecutively and must:  [¶]  (1) Identify the name of the document in which the specific material objected to is located;  [¶]  (2) State the exhibit, title, page, and line number of the material objected to;  [¶]  (3) Quote or set forth the objectionable statement or material; and  [¶]  (4) State the grounds for each objection to that statement or material."  (Rule 3.1354(b).)

Rule 3.1354(b) specifically identifies two acceptable formats for objections, neither of which was followed here.  (See Rule 3.1354(b) [the first format places each item of evidence objected to in one paragraph, followed by a paragraph stating the objection, and the second format places the evidence objected to in one column and the objection in an adjacent column].)  The purpose of the rules governing the formatting of evidentiary objections is to facilitate the trial court's review of a complex motion by enabling it to consider "each piece of evidence and all of the objections applicable to that piece of evidence separately."  (*Hodjat v. State Farm Mutual Automobile Insurance Company* (2012) 211 Cal.App.4th 1, 9.)

We see no reversible error.  Barrie's evidentiary objections were repetitive and boilerplate.  Each included the same six generic grounds.  And many of the grounds advanced for exclusion were clearly frivolous.  Further, and dispositive here, Barrie failed to comply with the procedural rules for the filing of written objections.  Although

15

the objections generally identified the paragraph numbers of the declarations to which Barrie objected, they did not quote or set forth the specific objectionable statements appearing in any of the declarations, as required under Rule 3.1354(b). Nor did Barrie provide a reference to objections to specific evidence by including the objection number in the right column of his response to defendants' separate statement of undisputed facts, as required by Rule 3.1354(b). Further, Barrie did not specifically object to any of the documents attached to the challenged declarations.[3] And finally, at the summary judgment hearing, Barrie did not address his evidentiary objections, including the procedural deficiencies identified in the trial court's tentative decision. Nor did Barrie explain why he objected to certain paragraphs of the challenged declarations when he did not dispute the truth of the factual statement(s) contained therein in his response to defendants' separate statement of undisputed facts.[4]

As noted, *ante*, with a few exceptions Barrie lodged the exact same six generic objections to each and every paragraph of the declarations submitted by Meeks, Griffin, and Gay. For example, Barrie objected to the entire fifth paragraph of Meeks' declaration, which stated: "When a position [with SMUD became] available, I would send out an announcement to notify everyone in the department and encourage them to apply. SMUD's Human Resources Department ("HR") would receive the applications

---

[3] To the extent Barrie now contends the trial court erred by refusing to exclude "multiple hearsay documents" attached to the challenged declarations, he forfeited the issue by failing to specifically object to the evidence in the trial court on this ground. (*People v. Farnam* (2002) 28 Cal.4th 107, 159; Evid. Code, § 353; see *People v. French* (2009) 43 Cal.4th 36, 46 ["Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court"].) For the same reason, Barrie forfeited his contention that Meeks' declaration was "inadequate" and/or inadmissible under Code of Civil Procedure section 437c, subdivision (e).

[4] For example, although Barrie objected to the entire third paragraph of Meeks' declaration--"The jobs that [Barrie] applied for are all civil service jobs at SMUD"--he conceded this fact was undisputed in his response to defendants' separate statement.

16

and resumes and screens the candidates, determining who qualifies for the position and who does not. After that, an oral panel interview takes place." Like all of his other objections, Barrie objected to this entire paragraph on the following grounds: "The declaration is replete with (1) hearsay, (2) Pursuant to California Evidence Code Section 352 . . ., (3) overbroad, (4) lacks foundation, (5) argumentative, and (6) violation of the best evidence rule." The statements in paragraph five of Meeks' declaration are certainly not hearsay, as there is no out-of-court statement implicating the hearsay rule. (See Evid. Code, § 1200.) Foundation for the statements is apparent in Meeks' declaration since he was the hiring manager for the jobs at SMUD that are the subject of this action. And it is clear that none of Meeks' statements are subject to exclusion under Evidence Code section 352 or on the basis that the statements are overbroad, argumentative or violate the best evidence rule. Many of Barrie's other evidentiary objections suffer from similar obvious infirmities.

In short, no basis for reversal appears. (See *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1118 [no abuse of discretion where trial court overruled all evidentiary objections because the objections failed to comply with the requirements of rule 3.1354]; *Hodjat v. State Farm Mutual Automobile Insurance Company, supra,* 211 Cal.App.4th at pp. 7-9 [no abuse of discretion where trial court refused to rule upon evidentiary objections because they failed to comply with the requirements of rule 3.1354].) Moreover, Barrie has not carried his burden to affirmatively show prejudicial error by providing reasoned legal analysis, supported by citation to pertinent authority and facts in the record. (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 [the party challenging evidentiary rulings has the burden to show error and prejudice].) Instead, Barrie simply complains, in a general fashion, that the trial court erred because "Defendants' declarations . . . were rife with hearsay and lacked proper foundation," which unfairly prejudiced his ability to oppose the summary judgment motion by

17

preventing the court from fully considering relevant and probative evidence supporting his claims, thereby improperly shifting the burden on summary judgment.

As we have explained, *ante*, when, as here, an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we may treat the point as forfeited. We do so here.

C. *Defendants' Evidentiary Objections*

We likewise reject Barrie's undeveloped contention that the trial court erred in sustaining various evidentiary objections raised by defendants. In support of this claim, Barrie asserts only that: "[T]he court improperly sustained objections to critical portions of [Barrie's] documentary evidence, excluding relevant and probative evidence that supported [Barrie's] claims of retaliation and discrimination: the DFEH and EEOC complaints and narrative. [Citation.] California law mandates that evidence opposing a motion for summary judgment be liberally construed in favor of the opposing party [citation]. [¶] The court's exclusion of [Barrie's] evidence – without a proper analysis of its relevance or probative value – was inconsistent with this standard and unfairly prejudiced [Barrie's] ability to demonstrate the existence of triable issues of fact."

Under the authority explained *ante*, we deem this conclusory claim of error forfeited.

### III

### *Motion for Summary Judgment*

Turning to the merits, Barrie argues reversal is required because triable issues of material fact exist as to each of the claims asserted in the operative complaint. As we shall explain, we disagree.

A. *Framework for Evaluating the Claims*

1. *FEHA Burden Shifting Test*

Workplace discrimination claims under FEHA adhere to the "three-stage burden-shifting test" articulated in *McDonnell Douglas Corp. v. Green* (1972) 411 U.S. 792.

18

(*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214.) Under the three-part test, "[the employee] has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion. A prima facie case establishes a presumption of discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer discharges this burden, the presumption of discrimination disappears. The [employee] must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the [employee] may offer any other evidence of discriminatory motive. The ultimate burden of persuasion on the issue of discrimination remains with the [employee]." (*Id.* at pp. 214-215; *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 354-356 (*Guz*).) The three-part *McDonnell Douglas* test is also used when evaluating claims of employment retaliation under FEHA. (*Yanowitz, supra,* 36 Cal.4th at p. 1042.)

"[An employee] may prove his or her discrimination [or retaliation] case by direct or circumstantial evidence or both." (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591.) "An employer moving for summary judgment on a FEHA cause of action may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case 'is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors.' " (*Id.* at p. 591; see also *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*).) A legitimate, nondiscriminatory reason is one that is facially unrelated to prohibited bias and which, if true, would preclude a finding of discrimination or retaliation. (*Guz, supra*, 24 Cal.4th at p. 358.) The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate, nondiscriminatory reasons were the basis for the adverse employment action. (*Kelly v. Stamps.com Inc.* (2005) 135

19

Cal.App.4th 1088, 1097-1098.) "[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . ., the ultimate issue is simply whether the employer acted with a motive to discriminate [or retaliate] illegally." (*Guz*, at p. 358, italics omitted.)

Under the third step of the *McDonnell Douglas* test, the "[employee] must . . . have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." (*Guz, supra*, 24 Cal.4th at p. 356.) "Once the employer sets forth a nondiscriminatory reason for the decision, the burden shifts to the [employee] to produce ' "substantial responsive evidence" that the employer's showing was untrue or pretextual.' [Citations.] '[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory [or retaliatory].' " (*Soria v. Univision Radio Los Angeles, Inc., supra*, 5 Cal.App.5th at p. 591; see *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861-862 (*Serri*) [noting that once the employer sets forth a nondiscriminatory reason for its decision, the employee must produce substantial evidence that the employer's stated reason for the challenged decision were untrue or pretextual, *or that the employer acted with discriminatory or retaliatory animus*]; *Choochagi v. Barracida Networks, Inc*. (2020) 60 Cal.App.5th 444, 457 [same].) To defeat a motion for summary judgment, the employee must demonstrate a triable issue by producing substantial evidence that raises a rational inference that intentional discrimination or retaliation occurred. (See *Guz,* at p. 357; *Serri,* at p. 861; *Kelly v. Stamps.com Inc*., *supra*, 135 Cal.App.4th at p. 1098.)

In demonstrating that an employer's proffered nondiscriminatory reason is untrue or pretextual, " ' "[t]he [employee] cannot simply show that the employer's decision was wrong or mistaken . . . . Rather, the [employee] must demonstrate such weaknesses,

20

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' " ' " (*Serri*, *supra*, 226 Cal.App.4th at p. 863.) It is the employer's honest belief in the stated reason(s) for the challenged decision and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case. (*King, supra,* 152 Cal.App.4th at p. 436.) "In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." (*Guz, supra*, 24 Cal.4th at p. 356; see *Serri, supra*, 226 Cal.App.4th at p. 863.)

Federal and California courts have acknowledged that proving intentional discrimination or retaliation can be difficult because " ' "[t]here will seldom be 'eyewitness' testimony as to the employer's mental process" [Citations.] It is rare for [an employee] to be able to produce direct evidence or "smoking gun" evidence of discrimination [or retaliation].' " (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 822-823.) "Thus, [an employee] may demonstrate via indirect or circumstantial evidence that they were the victims of discrimination [or retaliation]." (*Id.* at p. 823.) However, " ' "[c]ircumstantial evidence of ' "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate' [or retaliate] on an improper basis." ' " (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1182.) "It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri, supra*, 226 Cal.App.4th at p. 862.) "The [employee's] evidence must be sufficient to support a reasonable inference

that discrimination [or retaliation] was a substantial motivating factor in the decision. [Citations.]  The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the [employee's] evidence must be in order to create a reasonable inference of a discriminatory [or retaliatory] motive." (*Featherstone, supra*, 10 Cal.App.5th at p. 1159.)

"Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it 'remains subject to careful scrutiny.' " [Citation.]  The employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations.' [Citation.]  The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and [an adverse employment action].' " (*Featherstone, supra*, 10 Cal.App.5th at p. 1159.)

### 2. *California's Whistleblower Statute*

The Legislature enacted California's general whistleblower statute in 1984 to provide protections to employees who disclose wrongdoing.  (*People er rel. Garcia-Brower v. Kolla's Inc*. (2023) 14 Cal.5th 719, 722; *Carter v. Escondido Union High School District* (2007) 148 Cal.App.4th 922, 933.)  The purpose of the statute is to encourage workplace whistleblowers to report unlawful acts (or wrongdoing) without fear of retaliation.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287.)  In relevant part, the statute prohibits "[a]n employer, or any person acting on behalf of the employer, [from] retaliat[ing] against an employee for disclosing information . . . to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether

22

disclosing the information is part of the employee's job duties. (Lab. Code, § 1102.5, subds. (a), (b).) "A report made by an employee of a government agency to their employer" constitutes a protected disclosure under the statute. (*Id*., subd. (e).) An employee injured by prohibited retaliation may file a civil suit for damages against his employer or former employer. (*Lawson v. PPG Architectural Finishes, Inc*. (2022) 12 Cal.5th 703, 709 (*Lawson*).)

When an employer moves for summary judgment on a claim for whistleblower retaliation in violation of Labor Code section 1102.5, the employee must "establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. . . . Once the [employee] has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the [employee] not engaged in protected activity." (*Lawson, supra,* 12 Cal.5th at p. 718.) A contributing factor is any factor, which alone or in combination with other factors, tends to affect the outcome of a decision in any way. (See *Ververka v. Department of Veteran Affairs* (2024) 102 Cal.App.5th 162, 174.)

Under *Lawson*, whistleblower retaliation claims are evaluated under the governing framework set forth in section 1102.6 of the Labor Code, not the three-part burden shifting *McDonnell Douglas* test. (*Lawson*, *supra*, 12 Cal.5th at p. 718.) That provision of the Labor Code provides: "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (Lab. Code, § 1102.6.)

23

As our Supreme Court explained in *Lawson*, "[u]nder [Lab. Code section 1102.6, [an employee] does not need to show that the employer's nonretaliatory reason was pretextual. Even if the employer had a genuine, nonretaliatory reason for its adverse action, the [employee] still carries the burden assigned by statute if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action." (*Lawson, supra*, 12 Cal.5th at pp. 715-716.)

B. *First Cause of Action: Retaliation*

It is unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (§ 12940, subd. (h).) "This type of unlawful employment practice is known simply as 'retaliation.' " (*Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 636 (*Bailey*); *Yanowitz, supra*, 36 Cal.4th at p. 1042.) "[T]he language of section 12940, subdivision (h)—making it unlawful to 'discharge, expel, or otherwise discriminate against' an employee—refers to and encompasses the same forms of adverse employment actions that are actionable in FEHA discrimination claims under section 12940, subdivision (a). [Citation.] Thus, for both discrimination and retaliation claims, an adverse employment action is one that 'materially affects the terms, conditions, or privileges of employment.' " (*Bailey*, at p. 637; see also *Yanowitz*, at pp. 1050-1051.)

To establish a prima facie case for unlawful retaliation in violation of FEHA, an employee must show: (1) he engaged in "protected activity," (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. (*Bailey, supra,* 16 Cal.5th at p. 636; *Yanowitz, supra*, 36 Cal.4th at p. 1042.) "Although an employee need not formally file a charge in order to qualify as being engaged in protected opposing activity, such activity must oppose activity the employee reasonably believes constitutes unlawful discrimination,

24

and complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Yanowitz*, at p. 1047, fn. omitted.) " 'The relevant question . . . is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.' " (*Ibid.*)

By contrast (as we have set forth *ante*), to establish a prima facie claim of whistleblower retaliation in violation of Labor Code section 1102.5, the employee must show, by a preponderance of the evidence, that retaliation for their protected activities was a contributing factor in a contested employment action. The burden then shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons. (*Lawson*, *supra*, 12 Cal.5th at p. 718.) The employee need not "show that the employer's nonretaliatory reason was pretextual." (*Id.* at pp. 715-716.)

Retaliation may be proven by circumstantial evidence. (See *Le Mere v. Los Angeles Unified School District* (2019) 35 Cal.App.5th 237, 243 [involving a claim under FEHA]; *Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 365 [involving a claim under Labor Code section 1102.5]; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138 [same].) This includes the temporal proximity between a protected disclosure of information and adverse treatment. (See *Le Mere*, at p. 243 ["close temporal proximity between a plaintiff's protected activity and the alleged retaliatory conduct against the plaintiff has been found sufficient to support a prima facie case of causation" with respect the retaliatory animus and the adverse action]; *Taswell*, at pp. 365-366 [temporal proximity of whistleblowing in March and April, and adverse employment action in April, in addition to other evidence, raised a triable issue of

material fact regarding causation]; *Mokler*, at p. 141 [pretext could be inferred based on employer's "sudden change of position" toward employee after disclosure].)

Here, the operative complaint alleged unlawful retaliation in violation of FEHA (Gov. Code, § 12940, subd. (h)) and California's general whistleblower statute (Lab. Code, § 1102.5). Barrie asserted that SMUD denied him opportunities to interview and be promoted to supervisor in retaliation for his complaints to management about "the violation of [SMUD's] overtime policy and discriminatory hiring practices." According to Barrie, he was also "placed on an unranked eligibility list after he reported the same to EEOC/DFEH."

In granting summary adjudication of this claim, the trial court initially addressed the alleged violation of the whistleblower retaliation statute. The court found Barrie could not establish that "any adverse employment decisions against him" were "linked" to his complaints about the allocation of overtime opportunities or the filing of his administrative complaints with the DFEH and EEOC. As for unlawful retaliation under FEHA, the court found that summary adjudication was warranted for the same reason-- Barrie failed to present evidence "linking any adverse employment actions to a retaliatory motive." Further, the court found that SMUD "would have made the hiring decisions it made irrespective of [Barrie's] complaints."

In making these findings, the trial court determined that, "other than the timing," there was "no evidence" linking the challenged employments actions (e.g., failure to promote) to Barrie's complaints about discriminatory employment practices, explaining as follows: "While 'temporal proximity between a protected disclosure of information and adverse treatment' may serve as circumstantial evidence of retaliation [citation], it is insufficient here to establish a causal link when viewed within the totality of the circumstances. [Barrie] was not terminated, demoted, or otherwise limited in his prospects for advancement within SMUD. He simply was not selected for a position for which he applied because a more qualified candidate also applied. In the context of a

26

FEHA retaliation claim, 'temporal proximity alone is not sufficient to raise a triable issue of pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the [adverse employment decision].' [Citation.] While the standard under Labor Code section 1102.5 is higher for employers, [Barrie's] evidence of temporal proximity is insufficient to raise a triable issue."

On appeal, Barrie contends reversal is required because the evidence he submitted "established a causal link" between his protected activities, which included "multiple complaints about discriminatory overtime practices and unfair promotional processes," and "adverse employment actions, including exclusion from overtime opportunities, denial of promotions, and removal from the security investigation team." He asserts that the temporal proximity between his protected activities and the adverse employment actions raised a strong inference of retaliatory motive, which was sufficient to defeat summary judgment. We are unpersuaded.

As an initial matter, there is no evidence in the record showing that Barrie was denied or improperly excluded from overtime opportunities under SMUD's overtime policy. To the contrary, the only evidence in the record on this matter showed that Barrie and the other SMUD dispatcher assigned to the same shift received the same number of overtime opportunities (19) from January 2018 to March 2018.[5] As a consequence, Barrie failed to meet his prima facie burden to establish that he suffered an adverse employment action in the form of missed overtime opportunities due to unlawful retaliation. As for Barrie's claim that he was improperly removed from SMUD's threat assessment team, the record reflects that Barrie was removed from that team in June

---

[5] In his summary judgment opposition papers, Barrie claimed SMUD discriminated against him "because of his national origin and age by its adverse employment actions," including "taking away his overtime hours by 73 days." However, as pointed out by the trial court, there was no evidence to support this claim.

2016, approximately six months before he made his first complaint about the allocation of overtime opportunities in December 2016 and long before he complained that he was being discriminated against based on a protected characteristic. Thus, Barrie's removal from this team could not have been in retaliation for any protected activity.

As for the other alleged retaliatory actions--denial of promotions or the opportunity to interview for a promotion--even were we to assume that Barrie met his burden to establish a prima facie case of unlawful retaliation under FEHA, he failed to produce substantial responsive evidence that the nondiscriminatory reason offered by SMUD for the challenged decisions--that the candidate who was hired performed better during the oral interview--was untrue or pretextual, or that SMUD acted with retaliatory animus. Under FEHA, "temporal proximity by itself, while sufficient to establish a prima facie case, is not adequate to show pretext." "Where the employee relies solely on temporal proximity in response to the employer's evidence of a nonretaliatory reason for [an adverse employment action], he . . . does not create a triable issue as to pretext, and summary judgment for the employer is proper." (*Arteaga v. Brink's, Inc*. (2008) 163 Cal.App.4th 327, 353, 357; see *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 94 ["a mere temporal relationship between an employee's protected activity and the adverse employment action, while sufficient for the [employee's] prima facie case, cannot [alone] create a triable issue of fact if the employer offers a legitimate, nonretaliatory reason for the adverse action"].) Here, the evidence produced by Barrie was insufficient to permit a rational inference that SMUD's actual motive was retaliatory. Thus, Barrie failed to submit evidence that would allow a reasonable trier of fact to find this fact in his favor in accordance with the applicable standard of proof. (See *Aguilar, supra*, 25 Cal.4th at p. 850.) As such, Barrie failed to establish a triable issue of material fact to preclude summary adjudication.

28

As for the whistleblower retaliation statute, even were we to assume that Barrie met his burden to establish a prima facie case of unlawful retaliation under Labor Code section 1102.5, the record reflects that SMUD met its burden to demonstrate by clear and convincing evidence that the challenged employment actions would have occurred for legitimate, independent reasons even if Barrie had not engaged in protected activity. Here, there are three promotions at issue, which we briefly discuss in turn.

The first promotional opportunity was the physical security project manager position, for which Barrie applied in June 2018, three months after he complained to his supervisor that overtime opportunities were being improperly (or unequally) allocated based on race or national origin. Although Barrie was qualified for the position, Meeks did not select him for an interview and ultimately hired an external candidate who had similar experience as the person he was replacing. Meeks explained the process as follows: "I originally had ten candidates to interview, including Barrie and another internal candidate, Angelo Adams. However, after consulting with Talent Management, I narrowed the interview list to 6 candidates, removing Barrie and Mr. Adams. Before the interviews took place, some of the candidates withdrew, thus I added Mr. Adams back on the list, since I knew he had some working knowledge of aspects of the job and had shadowed the individual who previously held the position." Meeks further explained that he ultimately selected an "external" candidate for the position "due to his extensive experience [and] knowledge of physical security, regulatory compliance, and submitting security reports. [The external candidate] ha[d] experience at a local scale and abroad and had high security clearance in the private, government, and military sectors," which was "like that of the employee he replaced." According to Meeks, his decision not to interview Barrie was based on the existence of "more desirable candidates."

The second promotional opportunity was the security operations supervisor position for which Barrie applied in September 2018, six months after he made his claim that overtime opportunities were being improperly (or unequally) allocated on the basis

29

of race and/or national origin. Barrie was interviewed for the position but was not hired. Instead, two other internal candidates who received higher scores from the interview panel, which did not include Meeks, were hired. In making this decision, Meeks explained that he hired candidates that were not only qualified but possessed leadership qualities and made positive contributions to "better the department."

The third promotional opportunity was the security investigator position Barrie applied for in July 2019, five months after he filed an administrative complaint with the DFEH and EEOC on the basis of race, national origin, and age. Barrie, who had the highest score on the pre-interview screening matrix, was interviewed for the position but was not hired. Instead, an internal candidate that received the highest score from the interview panel, which did not include Meeks, was hired. In deciding to hire Reece, a black woman, Meeks explained that she had more investigative experience than Barrie and had worked as a security operations supervisor. The record reflects that, at the time the hiring decision was made, Barrie was working as a dispatcher in SMUD's security operations department and only had two years of investigative experience while Reece had 16 years of investigative experience.

We see no error in the trial court's decision to grant summary adjudication on this record. As for FEHA, Barrie did not produce substantial evidence showing that Meeks' stated reason for the challenged employment decisions was untrue or pretextual, or that Meeks acted with retaliatory animus. Barrie's summary judgment opposition papers did not cite any such evidence. Nor did Barrie point to any evidence other than minimal temporal proximity establishing that an activity proscribed by the whistleblower retaliation statute was a contributing factor in the alleged adverse employment actions. And SMUD presented sufficient evidence to satisfy its burden under Labor Code section 1102.6 on summary judgment. That is, SMUD showed by clear and convincing evidence that it took the challenged actions for legitimate, independent reasons even if Barrie had not engaged in protected activity.

30

Barrie did not point to any specific and substantial evidence that tended to show SMUD's interview process was used to mask retaliatory motives in violation of FEHA. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 [circumstantial evidence of pretense must be specific and substantial to create a triable issue with respect to whether the employer intended to discriminate or retaliate].) In his summary judgment opposition papers, Barrie failed to identify any particularly significant objective differences between his qualifications and those of the candidates who were hired or selected for an interview instead of him. And Barrie's own subjective belief that he was more qualified than the selected candidates and his speculation that the challenged employment decisions were motivated by an improper retaliatory purpose were not sufficient to raise a triable issue of material fact. (See *King, supra*, 152 Cal.App.4th at p. 433 ["plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations"]; *Horn v. Cushman & Wakefield Western, Inc*. (1999) 72 Cal.App.4th 798, 816 ["an employee's subjective personal judgments of his or her own competence alone do not raise a genuine issue of material fact"]; *Dollinger DeAnza Associates v. Chicago Title Ins. Co*., *supra*, 199 Cal.App.4th at pp. 1144-1145 [speculation and conjecture is insufficient to raise a triable issue of material fact].) To avoid summary judgment under FEHA, Barrie was required to produce evidence demonstrating weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in defendants' proffered legitimate reasons for the challenged actions such that a reasonable factfinder could rationally find them "unworthy of credence," and therefore infer that SMUD did *not* act for the asserted non-discriminatory reasons. (*Serri*, *supra*, 226 Cal.App.4th at p. 863.) Barrie failed to do so here. Accordingly, the trial court properly granted summary adjudication in favor of SMUD on Barrie's first cause of action.

C.  *Second Cause of Action:  Disparate Treatment*

Under FEHA, it is unlawful for an employer to discriminate against an employee " 'in compensation or in terms, conditions, or privileges of employment' " because of a protected characteristic.  (*Harris v. City of Santa Monica, supra,* 56 Cal.4th at p. 214; see § 12940, subd. (a) [identifying protected characteristics]; *Frank v. County of Los Angeles, supra,* 149 Cal.App.4th at p. 822 [under a disparate treatment theory, discrimination occurs when the employer treats some people less favorably than others because of a protected characteristic, including their race, national origin, or age].)

To establish a prima facie case for unlawful discrimination, a plaintiff must typically provide evidence that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."  (*Guz, supra,* 24 Cal.4th at p. 355; see also *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067-1068.)

Here, the operative complaint alleged disparate treatment by SMUD based on race, national origin, and age in violation of FEHA.  (§ 12940, subd. (a).)  Barrie asserted that one or more of these protected characteristics was a substantial factor in SMUD's denial of overtime and promotional opportunities to him after he complained of discrimination to management and filed administrative complaints with the EEOC and DFEH.  In granting summary adjudication of this claim, the trial court explained that Barrie's mere belief that Meeks "harbored discriminatory animus" towards him based on a few comments about civil wars and corruption in Africa and Barrie being "lucky to have a job" was not sufficient to satisfy the first step of the *McDonnell Douglas* test.  The court thus concluded that Barrie failed to carry his burden to show that it was more likely than not that SMUD had denied Barrie promotional opportunities based on a prohibited criterion--national origin, race, or age.  The court further found there was no evidence

supporting Barrie's contention that he was denied overtime opportunities because of a protected characteristic. The court added that SMUD had established that it made its employment decisions for legitimate, nondiscriminatory reasons.

On appeal, Barrie argues reversal is required because the trial court dismissed key evidence of discriminatory animus and failed to properly evaluate whether SMUD's proffered reasons for the challenged employment actions were a pretext for discrimination. He contends Meeks' remarks about Africa and his "significant role" in excluding Barrie from overtime and promotional "opportunities" raised "a genuine issue of discriminatory animus requiring resolution by a jury." Barrie insists that he presented sufficient evidence of both discriminatory remarks and disparate treatment to raise a genuine dispute as to whether SMUD's proffered reasons for the purported adverse employment actions were legitimate or merely a pretext for discrimination. But even if we were to assume that Barrie satisfied his burden to present a prima facie case of unlawful discrimination under a disparate treatment theory, SMUD met its burden to dispel the presumption of discrimination by articulating legitimate, nondiscriminatory reasons for its challenged employment decisions, as set forth *ante*. (*Guz, supra*, 24 Cal.4th at pp. 355-356.) Barrie failed to produce substantial responsive evidence demonstrating that SMUD's stated reasons were untrue or pretextual, or that the SMUD acted with a discriminatory animus, such that a reasonable trier of fact could conclude that SMUD engaged in intentional discrimination. (*Serri, supra*, 226 Cal.App.4th at p. 861.) Accordingly, the trial court properly granted summary adjudication in favor of SMUD on Barrie's second cause of action. (See *id*. at p. 862.)

D. *Third Cause of Action: Failure to Prevent Discrimination and Harassment*

Under FEHA, it is unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) In support of his third cause of action, Barrie alleged that he was subjected to discrimination and harassment during the course of his employment with SMUD "at the

33

hands of Human Resources and management[], namely Meeks," and that SMUD failed to take all reasonable steps to prevent the discrimination and harassment  Thus, this is a derivative claim that rests on the viability of Barrie's claims for unlawful discrimination and harassment.  The trial court found that summary adjudication was warranted because Barrie's claims for unlawful discrimination (second cause of action) and hostile work environment harassment (fourth cause of action) failed.

Because we conclude that summary adjudication was properly granted as to Barrie's second (*ante*) and fourth (*post*) causes of action, there is no basis to reverse the trial court's ruling on Barrie's third cause of action.  The ruling in favor of SMUD was proper.

E.  *Fourth Cause of Action:  Hostile Work Environment*

Under FEHA, it is unlawful "[f]or an employer . . . or any other person, because of race [or] . . . national origin . . . to harass an employee . . . ."  (§ 12940, subd. (j)(1).) "The law prohibiting harassment is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " ' [Citations.]  This must be assessed from the 'perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff.' " (*Nazir v. United Airlines, Inc*. (2009) 178 Cal.App.4th 243, 263-264.)

"Unlike FEHA discrimination claims, which address only *explicit* changes in the 'terms, conditions, or privileges of employment' [citation], harassment claims focus on 'situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee.' [Citation.]  In other words, 'discrimination refers to bias in the exercise of official actions on behalf of the employer' whereas 'harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace.' " (*Bailey, supra,* 16 Cal.5th at p. 627.)  Hostile work environment

34

harassment includes " '[v]erbal harassment" such as 'epithets, derogatory comments or slurs on a basis enumerated in the [statute]' " (e.g., race, national origin). (*Ibid*.)

To establish a prima facie case of a hostile work environment, an employee must show that (1) he is a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on his protected status, (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment, and (5) the employer is liable for the harassment. (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 581.)

"[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of [a protected characteristic]." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462.) With respect to pervasiveness, "harassment that is occasional, isolated, sporadic, or trivial" is generally insufficient; rather, "the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*).) This standard has both a subjective and objective component: "[A] plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's position, considering all the circumstances, would not share the same perception." (*Lyle,* at p. 284; see *Bailey, supra*, 16 Cal.5th at p. 629 ["The objective severity of harassment should be judged from the perspective of a reasonable person in the [employee's] position"].) "The working environment must be evaluated in light of the totality of the circumstances. . . . 'These may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " (*Miller*, at p. 462; see also *Bailey,* at p. 628.)

Errant remarks or sporadic comments may not be sufficient to create a hostile work environment.  (*Horn v. Cushman & Wakefield Western, Inc., supra*, 72 Cal.App.4th at pp. 809-810.)  To be pervasive, the harassing conduct must consist of "more than a few isolated incidents," unless the conduct is "severe in the extreme."  (*Lyle, supra,* 38 Cal.4th at p. 284.)  " ' "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." ' [Citation.] ' "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" ' are not sufficient to create an actionable claim of harassment."  (*Bailey, supra*, 16 Cal.5th at p. 628.)

Summary adjudication is properly granted on a hostile work environment cause of action if a reasonable trier of fact could not find, based on the employee's factual showing, that the harassing conduct was sufficiently severe or pervasive to create a hostile work environment.  (*Lyle, supra,* 38 Cal.4th at p. 291.)

Here, the operative complaint alleged that Meeks discriminated against Barrie based on his race by engaging in and permitting acts that created a hostile work environment.  (§ 12940, subds. (j).)  Barrie claimed Meeks subjected him to harassment based on race by "constantly say[ing] condescending things about Africans," asking "probing questions about civil wars, Africans being corrupt, and "repeatedly question[ing] [his] political leanings."  Meeks also told Barrie that he was "lucky" to have a job when Barrie complained about not "getting fair overtime opportunities."  Although the operative complaint only alleged harassment based on race, Meeks acknowledged in his deposition that the protected characteristic at issue was not race but national origin.

In granting summary adjudication of this claim, the trial court stated:  "[Barrie] contends that Meeks is liable for harassment based on his comments about African civil wars and corruption and Meeks' statement that [Barrie] was 'lucky to have a job.' [Barrie] has presented no evidence that the latter statement about [Barrie] being lucky to have a job was in any was based on [Barrie's] protected characteristic.  As for Meeks'

36

comments about African civil wars and corruption, [Barrie] admits that these comments occurred on at least two or three occasions, one of which was before Meeks was hired at SMUD. It is well-established that 'trivial (i.e., not severe) or occasional, sporadic, or isolated (i.e., not pervasive) incidents of verbal abuse are not actionable.' "

On appeal, Barrie argues the trial court erred by finding that the alleged incidents of harassment were isolated and trivial. In Barrie's view, the totality of the circumstances, including the repeated derogatory remarks made by Meeks and the cumulative effect of the adverse employment actions he was subjected to, created a triable issue of material fact as to whether there was hostile work environment harassment based on race.

We see no error. Barrie presented no evidence to support his contention that Meeks "constantly" said "condescending things about Africans." Indeed, in the trial court, Barrie failed to cite evidence of any specific "condescending" statement or racial or ethnic slur made by Meeks about "Africans." Instead, Barrie generally cited to exhibits A through Z of the declaration submitted by his attorney and simply stated that there was "documentary evidence in the form of [his] testimony and similar complaints against Meeks" in those documents. Such a showing was insufficient to create a triable issue of material fact to preclude summary adjudication. Moreover, as the trial court correctly pointed out, there were only three instances (at most) in which Meeks made allegedly improper remarks to Barrie about civil wars in Africa and African countries (or Africans) being corrupt. Barrie failed to identify the specific remarks he contends resulted in a hostile work environment based on race or national origin. And while there was one instance in which Meeks told Barrie that he was "lucky" to have a job, there was no evidence showing that this remark was based on a protected characteristic. Considering the totality of the circumstances, we conclude no reasonable trier of fact could find that the sporadic or isolated remarks were sufficiently severe or pervasive

37

enough to create a hostile work environment for a reasonable employee of Barrie's race or country of origin. (*Lyle*, *supra*, 38 Cal.4th at p. 291.)

To the extent Barrie contends there was evidence of other acts of harassment by Meeks that supported a hostile work environment claim, such as failure to promote, we are unpersuaded. (See *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 709 [explaining that while a supervisor's employment actions done in furtherance of their managerial role can constitute evidence supporting a harassment claim by communicating a hostile message, this only occurs when the actions establish a widespread pattern of bias].) As previously indicated, harassment in the context of a hostile work environment " 'refers to bias that is expressed or communicated through interpersonal relations in the workplace.' " (*Bailey, supra,* 16 Cal.5th at p. 627.) " ' "[H]arassment consists of conduct outside the scope of necessary job performance . . . . [¶] . . . [¶] . . . [C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment. . . . These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. . . . This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA." ' " (*Roby v. McKesson Corp.*, *supra*, 47 Cal.4th at p. 707; *Serri, supra,* 226 Cal.App.4th at p. 870 [common necessary personal management actions include but are not limited to hiring and firing, job or project assignments, office or work station assignments, and promotion or demotion].)

Here, the evidence submitted by Barrie was insufficient to defeat summary adjudication. As for Meeks' employment actions taken in furtherance of his managerial role, Barrie did not proffer evidence that would allow a reasonable trier of fact to find that those actions showed a widespread pattern of bias, such that it communicated a hostile message. In short, the evidence adduced by Barrie was insufficient to allow a factfinder to conclude that the conduct complained of (including the remarks made by

Meeks) was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualified as hostile or abusive to Barrie because of a protected characteristic.  Accordingly, the trial court properly granted summary adjudication in favor of SMUD on Barrie's fourth cause of action.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to recover their costs on appeal. (Rule 8.278(a).)

    /s/
Duarte, J.

We concur:


    /s/
Robie, Acting P. J.


    /s/
Renner, J.